## CAMP *against* SMITH.

Where an execution was levied on certain tan-works, consisting of land, buildings, vats, a bark-mill, and other implements for carrying on the tanning business, which tan-works were appraised and set off to the creditor; it was held, that although a part of the premises was personal property, and not acted upon by the execution, yet the title to the real estate was transferred.

*A.* indorsed a note payable at the bank, for *B.*'s accommodation; and, as security, *B.* mortgaged land to *A.*; the condition of the mortgage being, that *B.* should pay the note according to its tenor. *B.* failing in business, told *A.*, that he must provide for the note. Four days before it became payable, *C.*, in pursuance of an agreement between him and *A.*, paid the note at the bank, and took a release from *A.* of his interest in the mortgage. Held, that such payment at the bank by *C.*, was not a payment of the note by *B.*, within the condition of the mortgage, so as to revest the title in him.

This was an action of ejectment, demanding the seisin and possession of such proportion of an undivided moiety of a certain piece of land in *Durham,* containing thirty rods, and of the buildings and vats standing thereon, and appurtenances thereto, and other implements for carrying on the tanning business, as 326·41 bears to 365.

The cause was tried at *Middletown, February* term, 1822, before *Brainard,* J.

The defendant was in possession of the premises, holding under *Heth F. Camp.* Both the plaintiff and the defendant claimed title under *Asa Chamberlain.* The title claimed by the plaintiff accrued by virtue of the levy of an execution, in his favour, against *Chamberlain;* which was, in all respects, according to law, if the return on such execution was such as would

legally vest a title in the plaintiff. The officer, in his return, stated, that on the 20th of *July*, 1821, he levied on an undivided half of certain tan-works, or a tanning establishment, in *Durham*, consisting of two buildings, besides vats, a bark-mill and other implements for carrying on the tanning business, together with about thirty rods of ground, on which said buildings and vats are situated. The appraisers, duly appointed and sworn, appraised "the said undivided half of said tan-works, at the sum of 365 dollars;" and the officer thereupon set off to the plaintiff "such part of the said undivided half of said tan-works as the sum of 326 dollars, 41 cents, [the debt and costs] bears to the said sum of 365 dollars," in full satisfaction of the execution. The defendant objected to the reading of this return to the jury, insisting that it vested no title to the premises in the plaintiff. The judge overruled the objection, and suffered the return to be read to the jury as evidence of the plaintiff's title.

The attachment in the suit in which said execution was obtained, was levied on the premises, the 20th of *February*, 1821; and the subsequent levy and return, if valid, secured the lien thus created, and vested the title in the plaintiff, from that time; unless the defendant and his lessor had gained title, by previous conveyances. The defendant and his lessor claimed title, by virtue of deeds taken under the following circumstances. Some time previous to the 19th of *February*, 1821, the defendant and *Seth Tibbels* became the joint indorsers of *Asa Chamberlain's* note for 300 dollars, dated *December* 20th, 1820, and payable at the *Middletown* bank, on the 27th of *February*, 1821. On the 19th of *February*, 1821, *Chamberlain* failed, and informed his indorsers, that he could not pay his note, and they must pay it. To secure them, he executed and delivered to them, on the same day, a mortgage deed of the premises, the condition of which was, that he should "well and truly pay said note according to the tenor thereof." They then agreed with *Heth F. Camp* to pay and take up the note at the bank; and, in consideration thereof, agreed to release all interest in the premises to him. On the 23d of *February*, 1821, and four days before the note became payable, he accordingly paid the note, and took it up; and they, on the following day, released their interest in the premises to him. It did not appear, nor was it claimed, by the defendant, that the plaintiff had any knowledge of this arrangement. Upon these facts the plaintiff claimed, that by the payment of the note, in the manner speci-

*Middlesex,*
July,
1823.

Camp
*v.*
Smith.

fied, the condition of the mortgage was fulfilled, and the fee of the premises revested in *Chamberlain*, for the benefit of the plaintiff ; and that the payment of the note must be deemed to have been made on the personal responsibility of *Chamberlain*. The defendant insisted, that *Chamberlain* never performed the condition so as to defeat his, the defendant's, title ; but that the payment of the note enured to the defendant's benefit, and not to the plaintiff's. The judge instructed the jury, that the plaintiff had made out a title to the premises, and directed them to find a verdict in his favour, which they accordingly did. The defendant moved for a new trial, on the ground that the decision of the judge admitting the evidence offered by the plaintiff, and his direction to the jury, were erroneous.

*Staples* and *Hotchkiss*, in support of the motion, contended, 1. That the levy having been upon the tan-works, and upon implements for carrying on the tanning business, which were appraised and set off together, was void. " Implements " are utensils used by the hand, and are personal property ; which could not be disposed of, in this way. The real estate, then, was never specifically appraised and set off ; nor were there any *data* furnished from which its value could be estimated. The law requires real estate to be appraised specifically ; and if this is not done, no title is transferred : and it is nothing to the purpose, whether the debtor is in a better or worse condition than he would be, if the proceeding had been regular. This mode of acquiring title, was created, and is governed, by statute. If the statute be not strictly complied with, no title passes. *Hinman* v. *Leavenworth*, 2 *Conn. Rep.* 244. n.

2. That the direction of the judge to the jury, to find a verdict for the plaintiff, on the ground that the defendant acquired no title, by virtue of the mortgage deed from *Chamberlain*, was wrong. This point depends on the question, whether the condition of that deed was performed. Did *Chamberlain* pay his note according to the tenor thereof ? So far from this, he told his indorsers, that *he could not* pay ; and that *they must* pay ; and he, *in fact, did not* pay. Nor was the note *constructively* paid by *Chamberlain*. The indorsers were obliged to provide for the payment of it. This they effected, by their arrangement with *Heth F. Camp ;* by virtue of which he was placed precisely where they stood. No possible injury could accrue to the creditors of *Chamberlain*, in consequence of this arrangement. Nor after *Chamberlain's* failure, and notice of it given

to the indorsers, were they obliged to wait until the note was protested, before they took it up. This step did not prevent *Chamberlain* from paying the debt. He might still have gone to the bank, and tendered the money on the day, and so fulfilled the condition. There was, then, neither performance, nor excuse for non-performance.

<em>Middlesex,</em><br>July,<br>1823.<br><br>Camp<br><em>v.</em><br>Smith.

*Daggett* and *Stanley*, contra, contended, 1. That the plaintiff's levy was effectual to transfer a title to the real estate. The " vats and barkmill" were, unquestionably, attached to the freehold ; and the " other implements" might have been. There is nothing in the case to shew that they were not. But admitting that they were personal property, and incapable of being set off on execution ; this did not render the levy the less valid, so far as it concerned the land, the buildings and the vats ; which are all that the plaintiff seeks to recover. *Hitchcock* v. *Hotchkiss*, 1 *Conn. Rep.* 470. If all that the plaintiff claims is true, the debtor was not injured by the proceeding. The personal property did not pass ; and he had his real estate appraised at a higher price than it would otherwise have been.

2. That the title of *Chamberlain* to the estate in question, at the time of the plaintiff's attachment, was not devested, so that it could not be taken. If the condition of the deed was performed, by payment of the note, at or before the day ; or if the performance was prevented, by the act of the defendant, or of *Heth F. Camp*, under whom he claims, the property was liable to be taken by the plaintiff as a creditor of the mortgagor. The note was in fact paid before the day. If the indorsers, or their assignee, paid it as the *agents* of *Chamberlain*, it was a payment *by him ;* and his title unquestionably revested. If they were not his agents, the payment must still be deemed to have been made on his personal responsibility, and would have the same effect upon the title. It is very clear, that the money was not paid in consequence of any breach of the condition. At the time of the payment, the indorsers had no claim against *Chamberlain*, by reason of their liability, which could be enforced in law or equity. *Campbell* v. *Macomb*, 4 *Johns. Chan. Rep.* 538. The money, then, must have been paid on the ground of a new consideration.—*Heth F. Camp*, who paid the note, was neither the purchaser nor the assignee of it ; and cannot, on that ground, claim the benefit of the security.

*Middlesex,*
July,
1823.

Camp
*v.*
Smith.

HOSMER, Ch. J.   The plaintiff has brought an action of ejectment, for the recovery of a part of thirty rods of land, with the buildings and vats thereon, and appurtenant thereto, and *other implements* for carrying on the tanning business.   He claims title, by the levy of an execution, upon which the premises were appraised and set off, together with a bark-mill, the possession of which is not demanded.   To the validity of the levy it is objected, that the bark-mill, and the other implements referred to, were personal property ;  and besides, not having been defined, that they are unaffected by the levy.   It must be admitted, that the bark-mill, if it were not part and parcel of the freehold, was not so levied upon and disposed of, as to give the plaintiff any title to it ;  and from the indefiniteness and generality of the phrase, " the other implements for carrying on the tanning business," as well as, perhaps, from their nature, that they were not acted upon by the execution.   To this property the plaintiff has no title or claim ;  but the land, and vats and buildings, of which there may be a seisin, and which only were recovered, were duly levied upon, and set off.   It is far from resulting, as the execution was not so levied as to give a title to every thing purporting to be embraced by the officer's return, that therefore, the levy was utterly invalid.   *Utile per inutile non vitiatur.*   Undoubtedly, property was appraised, on which the plaintiff obtained no title ;  but this operates only to his disadvantage, and constitutes no objection against the levy, which he is endeavouring to support.   In *Hitchcock* v. *Hotchkiss*, 1 *Conn. Rep.* 470. the creditor had the fee-simple of land, appraised and set off upon an execution, when the debtor had only a life estate ;  but it was held, that his title was valid, to all the estate which the debtor had.   So, in this case, the creditor has acquired a legal title to all the property duly levied on, by paying more than its value ;  and this settles the question, so far as relates to the case under discussion.

Both the parties claim title to the premises under *Asa Chamberlain ;* the plaintiff, by levy of his execution, and the defendant, by deed of mortgage, precedent to the plaintiff's attachment.   The mortgage was executed to the defendant and *Seth Tibbals,* as collateral security to a note made by *Asa Chamberlain,* payable at the *Middletown* bank, of which they were indorsers for *Chamberlain's* accommodation.   Before the note fell due, *Chamberlain* became bankrupt, and declared to his indorsers, his inability to pay it ;  and likewise told them, that they must make payment of it ;  and, by agreement made by

them with *Heth F. Camp*, to relinquish the mortgage security to him, if he would satisfy the note, he, a few days before its maturity, paid the money due to the bank, and took the note into his possession. The day after this transaction, the defendant and *Tibbals* released to the said *Camp*, the estate mortgaged, in fulfilment of their agreement. On the part of the plaintiff, it is claimed, that by the preceding payment to the bank, the condition of the mortgage was fulfilled, (of which opinion, was the Judge below,) and the premises relieved from the incumbrance by mortgage. On the other hand, the defendant insists, that by the payment made to the bank, and repossession of the note by *Camp*, who acted throughout as the agent of the indorsers, the indorsers were satisfied, but the note was not paid. The latter, in my judgment, is the correct opinion. *Heth F. Camp* was not the agent of *Chamberlain* ; nor by *Chamberlain* was the note paid or extinguished. The intention of the transaction, was, to preserve the security, by the note and mortgage; and the advancement to the cashier, by *Heth F. Camp*, before the note fell due, a measure which was impelled by reason of *Chamberlain's* insolvency, and which could have been delayed only a few days, was for the purpose of entitling him to a deed of release, from the defendant and *Tibbals*. To raise the mortgage, *Chamberlain* must have paid the note, pursuant to the condition of the deed; but he made payment of it, neither in fact, nor in law. It is a very ungracious pretence, that by *Camp's* having anticipated the day of payment, *Chamberlain* was prevented from the performance of his contract; when this proceeding was had, pursuant to his request, and by reason of his declared inability to perform his engagement.

But, on this subject, it is a decisive consideration, that *Chamberlain* never was prevented from paying the note. It was capable of being paid by him to *Camp*, as much so, as that payment might have been made to the cashier, if the note had remained unpaid in his hands; and the supposed prevention of payment, is without any foundation.

That *the note* has never been paid, in any manner, is, in my judgment, the fair and legal construction of the facts in evidence. The payment was only made by the indorsers, through their agent, to the indorsees, in full of their demand, and the note taken back. The transaction may be assimilated to the payment of the contents of a note, by the first indorsee to his indorsee, and the resumption of the instrument. *Dugan* v.

*Middlesex,*
July,
1823.

Camp
*v.*
Smith.

*United States,* 3 *Wheaton* 172. *Chitty on Bills* 309. If, as in this case, the payees and first indorsers, advance the amount of the note to the indorsees, and repossess themselves of it, it is not distinguishable from the case just put. In both instances, the note is not invalidated ; but there is merely presented to the maker, a different holder, to whom the note has become due, and satisfaction must be made. This construction is warranted by the nature of the transaction ; is agreeable to the intention of all the parties to the note ; and is conformable to substantial justice. None of the parties to the note can complain ; and a proceeding both equitable and legal, cannot, unless by a perverted construction, be rendered available to a mere stranger, in which light the plaintiff must be viewed.

The opinion of the Judge below was incorrect ; and a new trial must be advised.

The other Judges were of the same opinion.

New trial to be granted.