### DAVENPORT *against* LACON and others.

The great principle of our law, regulating the intercourse of debtor and creditor, is, that *all* the property of the debtor shall be responsible for the debts of the owner.

The equitable interest of a *cestui que trust* in real estate, is subject to the lien of attachment and the levy of execution.

The effect of an attachment authorized by law and regularly perfected, cannot be destroyed, by any intermediate act of the debtor, changing his title, before execution can be obtained and the levy thereof completed.

The service of an attachment of real estate, or of any interest therein, in the manner pointed out by law, implies notice, which is considered as actual notice, to all persons.

*A* and *B*, partners, purchased land for the purposes of their business, being equally interested therein; but the deed, at the request of *B*, was taken in the name of *A*, on account of *B's* indebtedness, and to conceal from his creditors his interest in the property, and to prevent its being attached by them. *C*, a creditor of *B*, then attached *B's* interest in said land, in a suit against him. During the pendency of this suit, *A* conveyed his right in one undivided moiety of the land to *B*; and *B* immediately mortgaged all his interest therein to *D*. *C* afterwards obtained judgment in said suit against *B*, and had his execution levied on *B's* interest in the land. On a bill in chancery brought by *A*, to which *B*, *C* and *D* were made parties, the court having ordered the sale of the land, it was held, that *C*, by virtue of his attachment and the levy of his execution, was entitled to a proportionate share of the avails of such sale, as against *D*.

THIS was a bill in chancery. The material facts in the case were these. The plaintiff and *William Lacon*, one of the defendants, were partners in the business of manufacturing rolled iron wire, in *Stamford*; and for the purposes of their

business, several tracts of land, with the buildings thereon, were purchased. The purchase was made for the benefit of both the partners equally, to be occupied by them as partners; but the deeds were taken in the name of the plaintiff, at *Lacon's* request, on account of *Lacon's* indebtedness, and for the purpose of concealing his interest in the property from his creditors, and to prevent its being attached by them. On the 1st of *April*, 1837, *James J. King* caused *Lacon's* interest in this property to be attached; and on the 5th of *May*, 1837, *William H. Meade* caused all the right and title which *Lacon* then had, to be attached. On the 17th of *October*, 1839, the plaintiff conveyed all his right in one undivided moiety of the premises to *Lacon*, subject to said attachments. Afterwards, on the same day, *Lacon* conveyed all his interest in the premises to *Thomas B. Butler*, Esq., in trust for *John Lacon*, of *Shropshire* county, in *England*, an alien, incapable of holding real estate in this state, to secure a debt to him of 5000 dollars. The attaching creditors prosecuted their respective suits, and recovered judgments and executions therein, and caused such executions to be duly levied, after the deed to *Butler* in trust for *John Lacon*, on the premises, as the property of *William Lacon*. These executions, after the levy, were duly recorded.

The plaintiff called for an adjustment of the partnership accounts, and of the accounts while he and *Lacon* were tenants in common of the premises: he prayed also for a partition of the premises, by sale thereof, and for the ascertainment of the rights and shares of the different claimants; denying that the execution creditors acquired any title.

The court, with the consent of all the parties, decreed a sale of the premises; and reserved the question as to the manner of distributing the avails of the sale, for the advice of this court.

*Hawley*, for the execution creditors, contended, 1. That *Lacon's* interest could be attached and taken in execution, independently of any fraudulent intent in the creation of the trust. 2 *Bla. Com.* 337. *Foote* v. *Colvin*, 3 *Johns. R.* 216. 222. *Jackson* d. *Ten Eyck* v. *Walker*, 4 *Wend.* 462. 1 *Sw. Dig.* 133.

2. That if otherwise, yet as the deed in question was taken

*Fairfield,* June, 1845.

Davenport *v.* Lacon.

in *Davenport's* name, at the request of *Lacon,* and for the express purpose of concealing the property from his creditors, it will, as against those creditors, be treated as his property. *Goodwin* v. *Hubbard,* 15 *Mass. R.* 210. *Whittlesey* v. *Mc-Mahon,* 10 *Conn. R.* 137. *Botsford* v. *Beers,* 11 *Conn. R.* 369. *Smith* v. *Starkweather,* 5 *Day,* 207.

*Butler,* for the defendants, contended, 1. That the interest of *Lacon* in the real estate being that of a *cestui que trust,* and the title of the trustee not having been derived from him, he had no attachable interest. *Kempton* v. *Cook,* 4 *Pick.* 305. *Howe* v. *Bishop,* 3 *Metc.* 26. *Reed* v. *Woodman,* 4 *Greenl.* 400. The attachments, therefore, created no lien, which would affect the title; and *Davenport* could convey the estate, without incumbrance. The cases of *Whittlesey* v. *McMahon* and *Botsford* v. *Beers,* do not impugn this proposition.

2. That the conveyance by *Davenport* to *William Lacon,* and the subsequent mortgage by *William Lacon* to *John Lacon,* to secure his debt, gave *John Lacon* the legal title, and a better equity than that of the attaching creditors, with or without notice. No notice, however, is found.

3. That the executions having been levied on the land, as the estate of *William Lacon,* after the mortgage, and without reference to it, the levying creditors acquired no title—none, at any rate, affecting the title of *John Lacon.*

WILLIAMS, Ch. J. The question submitted to us, upon the argument, is, whether those creditors, who had attached the equitable interest of *William Lacon,* could, by virtue of their attachments and subsequent levies of execution, acquire such an interest in that property as to be entitled to a proportionate share of the avails of sale as against *John Lacon ;* in other words, whether an equitable interest is subject to the lien of an attachment, if not completed, by levy of execution, before this legal title is transferred. And upon this subject, it is not deemed necessary to follow the counsel into the learning of uses and trusts, or to inquire what is the *English* law, or the law of our sister states.

The court is of opinion, that the principles of our law in relation to this subject, though they may be peculiar, are well settled, and are not to be departed from.

*Fairfield,*
June, 1845.

Davenport
*v.*
Lacon.

The great principle regulating the intercourse of debtor and creditor in this state, has been, that all the property of the debtor should be responsible for the debts of the owner. Accordingly, it was early provided, that lands should be subject to attachment; but when the legislature came to specify how lands should be set off on execution, it was enacted, that all lands and tenements belonging to any person, in his own proper right in fee, shall stand charged with the payment of his just debts; (*Stat.* of 1702, *p.* 282. ed. 1808) and notwithstanding the estate spoken of is only an estate " in fee," yet estates for life or for years, have ever been subject to the same process. So too an equity of redemption, as well after as before the law day, has also been considered as subject to attachment and execution. So far as we are informed, it was practiced from time immemorial, notwithstanding the sage *dictum*, that an equity of redemption is a thing of no value in the eye of the law, and not to be regarded. The question in 1802, came directly before this court; and it was said, that such an interest was real estate, and often of great value. It descends to heirs, and does not go to executors. It passes by words in a devise, as real estate; and it would operate great injustice to give this statute a construction, by which equities of redemption should be exempt from the payment of debts. Nor have the superior court, it is believed, ever adopted such a construction. A sanction, therefore, was given, by the highest tribunal, to what had before been understood to be the law upon this subject. *Punderson* v. *Brown*, 1 *Day*, 93. 96. And among the numerous cases of levies of this kind since that decision, this principle has never been questioned. *Franklin* v. *Gorham*, 2 *Day*, 142. *Smith* v. *Starkweather*, 5 *Day*, 207. *Scripture* v. *Johnson*, 3 *Conn. R.* 211. *Lyon* v. *Sanford*, 5 *Conn. R.* 544. *Hobart* v. *Frisbie*, 5 *Conn. R.* 592. *Allyn* v. *Burbank*, 9 *Conn. R.* 151. If this question is not at rest, then there can be nothing settled in our judicial proceedings; and if it is, it seems as if it must go far to settle the question before the court. The principle settled, is, that an equitable estate may be attached; and we can discover no real difference from the manner in which the equity arose, whether it arose from a right to pay money borrowed after the legal estate had been forfeited, or whether it arose from payment of money for the purchase of a legal estate in the

name of another. In neither case, is there a right at law. In both cases, there is a good equitable title; and as it has been so long and so uniformly settled, that the operation of the statutes making real estate subject to debts, is not confined to estates where the debtor has a legal interest, we can see no foundation for a distinction between one equitable interest and another. If any such exists, it is incumbent on those who claim it, to show such distinction. So far from showing any authority to this effect, the cases decided in this court seem directly opposed to such a distinction. In the case of *Whittlesey* v. *McMahon,* 10 *Conn. R.* 137. the defendant had purchased property as a substitute for property of his wife, which he had expended, and taken the deed to his children, so that he never had any legal interest in the lands; but it was levied upon by his creditor; and this court, as a court of chancery, held the levy good. So too, in the case of *Botsford* v. *Beers,* 11 *Conn. R.* 370. land was levied upon as the property of *A. & G. Shepherd.* This land had been the property of one *Glover,* and was by him mortgaged to *Daniel Beers.* His equity of redemption was attached, by the *Shepherds,* on a note in the name of *Munson* and *Street,* and set off on execution. The *Shepherds* then procured deeds from *Beers,* the mortgagee, and *Munson* and *Street,* to their sons who were in possession, when the same was attached as the property of *A. & G. Shepherd;* and this court perfected the right of the levying creditor. In the state of *New-York,* the same principle is introduced into their code, by the revised statutes. 1 *Rev. Stat.* 74. 4 *Wend.* 462.

It may be said, that the cases last above cited from our own reports, were cases where the deeds were avoided under the statute regarding fraudulent conveyances. They were so; and this case is precisely of the same character. Neither in this case nor in those, had the debtor ever any legal estate in the lands. But in those cases, the court, considering that the consideration of the purchase was paid by the debtor, and that the legal estate was placed in their children, to avoid creditors, treated it just as if the conveyance had first been made to the debtors, and by them transferred to their children, to avoid their creditors; thus giving a liberal construction to a statute made in suppression of fraud. And in that respect, this case does not differ from those. For here, as

well as there, the deeds were taken in the name of a third person, on account of the indebtedness of the real purchaser, and to conceal the knowledge from his creditors. The argument, therefore, attempted to be drawn from the case in *Metcalf,* that here was no legal interest, is as applicable to those cases as to this on trial. That was a question in a court of law ; and we can see no difference between this case and that, except that after the attachment, and before the perfecting of the rights of the creditor, by the levy of execution, in this case there was the conveyance of the legal estate to a *bona fide* creditor, without actual notice. And we do not think, that this can vary the rights of the attaching creditor. If it could, it would entirely defeat the principle which has been established in so many cases, that a creditor may levy upon an equitable as well as legal interest. If he can levy an execution upon such an interest, he certainly may attach it. And if the law permits an attachment of the property, and that attachment is regularly perfected, it will never permit the effect of that attachment to be destroyed, by any intermediate act of the debtor, before execution can be obtained. The effect of an attachment, in all cases, is to sequester the property to await the judgment ; and no case, it is believed, can be found, where the debtor, by any act of his own, can take from the creditor the right so acquired. Death, indeed, by our law, may dissolve it ; but this is considered as an act of Providence, and is founded upon the equality established by our statute in distributing the property of a debtor among his creditors after his decease. If the owner of an equitable estate could, by procuring the legal title, and then selling or mortgaging it to a creditor, defeat an attachment, few cases would arise, in which it would not be done ; and the attaching creditor would be deprived of a lien rightfully acquired, in consequence of a delay in procuring his judgment, which the forms of law required, and which he had no power to prevent. But it has been said, by this court, to a claim somewhat similar, that a creditor in an execution can never be prejudiced, by any change of the debtor's title between the commencement and completion of the levy of an execution. *Smith* v. *Starkweather,* 5 *Day,* 207. 210. And we see no difference in principle between the commencement of the levy of the execution and the commencement of the

lien, whether that lien commenced by attachment or execution.

It is said, that the levying creditor has nothing until he gets it by a decree in chancery. It is true, he has no legal interest; but he has a lien, which a court of equity will regard. *Lyon* v. *Sanford,* 5 *Conn. R.* 544.

It is further claimed, that the equity of the mortgagee is equal to that of the attaching creditor. That seems to be assuming the very point in dispute—whether in a court of equity this attaching creditor is not considered as having an equitable lien, which cannot be defeated, by a subsequent act of his debtor. If it is so, they are not in equal equity.

Besides, an attaching creditor, to perfect his attachment, must give notice thereof, in the manner pointed out by law; and the notice so given, is to be considered as actual notice to all persons. When then this mortgagee takes this mortgage, he must know, that it was already subject to the claims of these creditors; and if he claims against them, he cannot be considered as a *bona fide* creditor; much less can he claim any priority. The case cited from 3d *Metcalf,* was an action at law.

The superior court, therefore, is advised, that these attaching creditors are entitled to their proportional avails arising from the sale of this property.

In this opinion the other Judges concurred.