WATERBURY SAVINGS BANK *vs.* PETER LAWLER, TAX
COLLECTOR.

The foreclosure of a mortgage of real estate and the becoming absolute of the
    title in the mortgagee by the failure to redeem, constitute a "transfer" of the
    property, within the meaning of the statute which provides that real estate of
    any tax payer shall be liable for all his taxes for one year, and afterwards
    until a "transfer thereof."
An injunction will not be granted to restrain the collection of public taxes.
And it does not alter the case that the applicant for the injunction is not the
    tax-payer, but a person whose property is levied on for the taxes of another.

BILL IN EQUITY for an injunction; brought to the City Court
of the city of Waterbury, and heard before *Cowell, J.* Facts
found and injunction granted, and motion in error by the
respondent. The case is fully stated in the opinion.

*S. W. Kellogg* and *J. W. Webster,* for the plaintiff in error.

*C. W. Gillette,* for the defendant in error.

LOOMIS, J. The City Court of Waterbury passed a decree
enjoining the respondent as tax collector from levying his tax
warrant on certain land of the petitioner, and from selling
the same to collect sundry taxes assessed on the land against
Richard Vicars while he owned an equity of redemption in
the same subject to a mortgage to the petitioner; and the
respondent seeks by motion in error to reverse this decree for
several reasons mentioned in his assignment of errors, which
may be reduced substantially to two:—

1st. That the facts found by the court show that the taxes
in question became a lien on the land which continued more
than a year after the taxes had become due, notwithstanding
the petitioner had foreclosed the mortgage, and the title to
the premises had become absolute by failure of the respondent
to redeem.

2d. That the remedy by injunction will not lie to arrest
the collection of public taxes.

The essential facts relative to the first point are as follows:
The taxes in controversy were laid on the annual town lists

during four successive years, from 1872 to 1875, inclusive, and were duly assessed upon the land against Vicars, while he was the owner of the equity of redemption subject to a mortgage to the petitioner, and was in possession of the premises.

As Vicars had no other property the taxes were legally collectible out of this land unless the facts hereafter mentioned show a transfer of the land more than one year after the taxes had become due. The petitioner, in March, 1877, obtained a decree of foreclosure, and in April of the same year, more than a year after all the taxes in question had become due, the title to the premises became absolute in the petitioner. And after this, in the month of August, 1877, the respondent first undertook to collect the taxes by levying his tax warrant on the land.

The precise legal question which arises on the facts just stated is, whether the foreclosure of a mortgage, and the title becoming absolute in the mortgagee by neglect of the owner of the equity to redeem, constitute a transfer of the land mortgaged within the meaning of the General Statutes of 1875, p. 163, sec. 15, which is as follows:—

"Real estate owned by any person in fee or for life or for a term of years, by gift or devise and not by contract, shall stand charged with his lawful taxes, in preference to any other lien, and may be sold for the same, and costs of collection, within one year after the taxes become due, notwithstanding any transfer thereof, or any levy of attachment or execution thereon; and shall, after the expiration of such year, and before any such transfer or levy, remain liable for the payment of such taxes and costs until paid."

The argument in behalf of the respondent is, that the foreclosure and subsequent proceedings referred to cannot constitute a transfer, because the title was conveyed to the mortgagee on the execution of the mortgage and the foreclosure only appropriated the pledge and extinguished the mortgage debt to an amount equal to the value of the property mortgaged. This argument erroneously assumes that the true meaning of the word "transfer," as used in the statute,

is to be determined by looking only at the legal and equitable relations of mortgagor and mortgagee technically considered in reference to each other. But the true test is whether there has been a change of ownership in relation to the public and in contemplation of the laws relative to taxation. Now the law is well settled that, except as between the immediate parties, the mortgagor before foreclosure is owner of the property; his interest is real estate, to be conveyed, attached, taxed, and inherited only as such, while the interest of the mortgagee is mere personal estate. *Lacon* v. *Davenport,* 16 Conn., 341, and 17 Conn., 281; *Punderson* v. *Brown,* 1 Day, 96; *Gunn* v. *Scovil,* 4 Day, 242; *Toby* v. *Reed,* 9 Conn., 224.

But after foreclosure and failure to redeem the mortgagor ceases to have any interest whatever in the premises and the mortgagee becomes the absolute owner. And the parties sustain the same relation to each other and the public, for the purposes of taxation under our statutes. Before foreclosure and failure to redeem the property could not have been assessed as the real estate of the mortgagee, nor afterwards as that of the mortgagor. It would seem very strange if there could be such a complete change of ownership in relation to the property without a "transfer thereof" within the meaning of the statute.

We conclude therefore that the respondent had no right to collect the taxes in question out of the land described, and that there was no error in the decision of the court below in this regard.

And this brings us to the second question—whether the threatened wrong can be prevented by injunction.

This extraordinary preventive remedy of a court of equity is here invoked upon the ground mainly that the proceedings already commenced by the levy of the tax warrant, if allowed to be completed, would embarrass and becloud the petitioner's title in the land described and diminish its value.

A cloud upon one's title is something which shows *primâ facie* some right of a third person to it. And in this case, as the illegality of collecting the taxes out of the identical property assessed would not appear on the face of the record

of the proceedings relative to the laying and collecting of the taxes, a *primâ facie* right in a third person who should receive a deed of the land from the tax collector would thereby be created, which would bring the case apparently within an extensive branch of equity jurisdiction. "But," as ELLS-WORTH, J., remarked in giving the opinion in *Munson* v. *Munson*, 28 Conn., 586, "the power is not exercised as a, matter of course, nor under any universal rule or principle of law requiring its exercise. It is preventive, as we have said, and very much must depend upon the extent and imminence of the danger threatened, and the view which will be taken of the case by a discreet judge."

Although, as suggested, the facts of this case may bring it within the ordinary definition of a threatened cloud upon the plaintiff's title, by creating a *primâ facie* right which must be overcome by evidence aliunde, yet there is one element want-ing, which in this class of cases always calls most impera-tively for equitable interference. I refer to the fact that the evidence to rebut the *primâ facie* title is not in this case liable to be lost by the unavoidable death of witnesses, or any other cause likely to happen; for the rebutting facts relied upon, to wit, the mortgage, the foreclosure, and the date when the plaintiff's title became absolute, are all matters of record and easily obtained. So that ultimately the petitioner will be sure to vindicate his title in a court of law and successfully defend his possession. The injury to be appre-hended therefore is by no means irreparable, and the court might well act upon its discretion and deny the injunction.

But there is a more conclusive reason for refusing the remedy prayed for. The policy of our law has now become quite well settled, that the extraordinary remedy by injunc-tion cannot be invoked to hinder or interfere with a collector of taxes in the discharge of his public duty, because, to repeat the language of the court in *Arnold* v. *Middletown*, 39 Conn., 406, "it would interrupt the collection of taxes, one of the most important attributes of the sovereign power, one of its most vital functions. Such an interference might, at times, be dangerous to the safety of the state, and is not to be resorted to except for the most imperative reasons."

The case of *Dodd et al.* v. *The City of Hartford*, 25 Conn., 232, was the first in the line of decisions in this state that resulted in establishing the above doctrine. It was there held that a bill in chancery would not lie to restrain the city from enforcing the collection of illegal assessments by the levy of warrants on personal estate. SEYMOUR, J., in giving the opinion, laid some stress on the fact that there was no averment in the bill that the real estate of any of the parties had been or could be levied on, and that the warrant only authorized the taking of personal estate. This may have led the profession generally to assume that the court would recognize a distinction between personal and real estate in the application of the remedy by injunction. But the late case of *Rowland* v. *First School District of Weston*, 42 Conn., 30, obliterates this supposed distinction. FOSTER, J., in giving the opinion, says:—"We perceive no substantial reason why an injunction should be granted to protect real estate from a levy, that would not apply with equal force to personal estate. If there be any difference, the necessity of protecting personal property would seem to be the greater. A party might be deprived of personal chattels, even under an illegal taking, and so be compelled to resort to an action for damages as the only redress. Not so in regard to real estate. There could be no amotion of that, by any levy, valid or void."

It may perhaps be suggested that there is ground to distinguish the case at bar from the cases referred to, in the fact that the latter are all cases where the applicant for injunction was the tax-payer, while in this case it is a third party whose property is to be taken for the taxes of another. Stated in this way the suggestion appears plausible, but on more careful consideration we do not think it furnishes a sufficient basis to distinguish the cases in principle. It is true that the proceedings to collect the taxes in the present case are not against the person assessed. But it should be observed that the proceedings are not against any person, as such, but are against the *identical property on which the taxes were assessed*, and which is *primâ facie* holden for them, and the finding shows that there was no other way by which these taxes could be

recovered.  This differs therefore from the flagrant case sug-
gested, of proceeding to collect one person's tax out of
another, or out of property that had no legal connection with
the taxes in question.  When therefore the tax collector, as
in this case, proceeds against either the proper person or the
proper estate to obtain the taxes, and adopts the usual and
regular methods of procedure, we see no good reason why it
does not contravene the rule of public policy to interfere with
the proceedings by injunction, as much in one case as in the
other.

We therefore advise the Superior Court that there was error
in the City Court in deciding that an injunction would lie,
and that the decree of that court be reversed.

In this opinion the other judges concurred.