MARIE E. IVES, ADMINISTRATRIX, ET AL. *vs.* GEORGE H. BEECHER ET UX.

Third Judicial District, New Haven, January Term, 1903.
TORRANCE, C. J., BALDWIN, HAMERSLEY, HALL and PRENTICE, Js.

The process provided in 1878 (General Statutes, Rev. 1902, §§ 4149–4153), whereby a judgment creditor may obtain and foreclose a lien upon his debtor's real estate, was intended as a new, simple, efficient and inexpensive mode of accomplishing the result theretofore reached only by a levy of execution, but without its technicalities or exacting requirements; and is therefore to be favorably construed to carry out its manifest purpose.

Ives v. Beecher.

Such a lien is not rendered invalid because the precise interest of the debtor in the land is not stated in the certificate filed in the town clerk's office. Whatever that interest is, or may prove to be, is subject to be taken on foreclosure, provided it is such an interest as might have been taken upon execution.

Nor does the failure of the lien as to one or more of the pieces of land described in the certificate affect its validity in respect to the other pieces.

When property is left in trust to pay over the income, and no discretion is given to the trustee to withhold payments, the beneficiary has an interest which may be taken by creditors upon attachment and execution.

The foreclosure of a judgment lien merely cuts off the right of the debtor to redeem whatever interest, subject to execution, he may have in the land. Accordingly, it is unnecessary to determine, in the foreclosure suit, the nature and extent of that interest; especially where, as in the present case, it depends upon the construction to be given to a written instrument in which persons not before the court are interested. To maintain the foreclosure suit it is enough for the creditor to show a *prima facie* right, title or interest in the debtor, or that reasonable ground exists for asserting such interest or ownership in the debtor.

Argued January 28th—decided March 4th, 1903.

ACTION to foreclose a judgment lien, brought to the Superior Court in New Haven County; facts found and case reserved, *Roraback, J.*, for the consideration and advice of this court. *Judgment advised for plaintiffs.*

The facts are sufficiently stated in the opinion.

*Henry G. Newton* and *Harrison Hewitt*, for the plaintiffs.

*Charles S. Hamilton*, for the defendants.

PRENTICE, J. The plaintiffs seek the foreclosure of a judgment lien. The judgment was one against both the defendants herein. The lien was filed upon six separate pieces of property. It is conceded that the defendant Mrs. Beecher owns the three pieces last described in the lien. The defendants deny that she has such an interest in either of the other three pieces as can be taken under a judgment lien. Confessedly she is not the absolute owner of either. Mr.

Beecher has no interest in any of the property, save such as he may have as the husband of Mrs. Beecher.

This situation raises preliminary questions as to the validity of the lien in any event.    The lien is expressed to be " placed upon the following described real estate " of the defendants.    The defendants contend (1) that the lien is invalid as against the first three pieces, because it does not accurately describe the interest of Mrs. Beecher therein ; and (2) that the lien being invalid as to some of the pieces described is therefore invalid as to all.    We are pointed to no authority in support of these claims—except such as is attempted to be drawn from an assumed analogy to mechanics' liens—and we know of none.

Upon the rendition of a judgment the judgment creditor acquires, as against all the debtor's real estate and alienable beneficial interests therein not exempt from execution, the right to appropriate, if need be, any or all of the same to the satisfaction of the judgment, by such process as the law provides for that purpose.    This right of appropriation extends to each parcel of property to the precise extent of the debtor's interest therein.    Prior to 1878 our statutes recognized only one method of enforcing this right : that was by means of a levy of execution.    By this process the right, which had before been a general one, became specific as to the property levied upon.    The first step of the levy created a specific lien by means of which the particular property or interest therein was, by the completion of the levy, sequestered to satisfy the judgment.    In the creation of this specific lien it still remained, if the levy was sufficiently comprehensive, that it attached, as did the original right, to the precise interest of the debtor in the property, and not to his apparent or supposed interest therein, and the purchaser at the execution sale acquired the debtor's title or interest, whatever it was in fact.    *Hitchcock* v. *Hotchkiss*, 1 Conn. 470.

In 1878 the legislature sought to provide another more simple and beneficial process for the enforcement of the general right created by a judgment ; hence the legislation which now appears in the Revision of 1902, § 4149 and follow-

ing. We have heretofore said that this legislation was designed to further the interests of both creditor and debtor, and therefore to be favorably construed to carry out its manifest purpose. *Beardsley* v. *Beecher*, 47 Conn. 408 ; *Hobbs* v. *Simmonds*, 61 id. 235. It is clear from the purpose and provisions of this Act of 1878 that it was intended not only to furnish a new process but, so far as interests in real estate were concerned, one which was to be coextensive in its application with the existing process. Its object, like that of the process by levy, was to create a specific lien upon specific property, through which any unexempt, alienable, beneficial interest therein which the debtor might have, might be appropriated to satisfy the judgment. It could not reach interests which the debtor did not have. To be efficient it must so operate as to reach all that he had, whether apparent or not. The legislature was evidently looking for a process which should be at once as effective as the old, and at the same time simple, inexpensive, usable by persons not astute in the law, and not likely to be defeated in its ends through technicalities or exacting requirements. Therefore the absence of any requirement, or suggestion of requirement, that the judgment creditor should, at his peril, be able to know and in fact describe the precise interest of the debtor, in his attempt to convert his general right into a specific enforceable lien by the new process. No such pitfall was prepared. The provisions and requirements of the law enacted were the simplest possible. It was framed upon the simple idea of effectuating the general right as against certain specified property, by means of a recorded certificate, by force of which a specific lien should be created which should attach to that to which the original right attached, to wit, to the debtor's precise interest, whatever it was, and which could be enforced by foreclosure and the debtor's interest thus taken. The form of the certificate was prescribed. This form was apparently intended for all situations. It was apparently intended, and the reasons for the intentions are easy to discover, that by virtue of it any interest in lands subject to levy of execution might be reached, and reached without a precise description

or general specification of that interest. This intention controls us, as it should, in concluding, as we do, that the plaintiffs' lien was in form sufficient to enable them by its foreclosure to take whatever interests, subject to levy of execution, the defendants may have had in the several pieces described.

The second contention, that the failure of a judgment lien as to any piece described in it accomplishes a failure as to all, has less merit. The argument sought to be drawn from an analogy to mechanics' liens wholly falls, since the analogy in its pertinent points does not exist. The maxim, *utile per inutile non vitiatur*, fully expresses the legal results of the assumed situation. For a case furnishing a closer analogy than those referred to, see *Camp* v. *Smith*, 5 Conn. 80.

The first three of the pieces of land described in the lien were owned by Sarah L. Maltby at her death in 1871, she having inherited them from her father. She left a will in which she devised one-fourth part of the real estate left her by her father, to Henry White, in trust and confidence that he would annually pay over the rents, issues, interest and profits thereof to Mrs. Beecher during her natural life. In the distribution the second of the pieces described in the lien was set out to Mr. White under this trust for Mrs. Beecher's benefit. Mrs. Beecher thus became the *cestui que trust* of an estate for her life in this piece.

This trust, it will be observed, is not of the kind denominated a spendthrift trust. It is not one by the terms of which the trustee has a discretion as to what shall be paid over to the *cestui que trust*. The rights of the latter are fixed and definite, and there is no attempt to limit her power of alienation by her voluntary act, or *in invitum* by her creditors. Mrs. Beecher's interest is one entirely under her control and alienable by her. Such an equitable estate we have repeatedly held was one which could be subjected to the rights of creditors upon attachment and execution. *Davenport* v. *Lacon*, 17 Conn. 278; *Johnson* v. *Connecticut Bank*, 21 id. 148; *Bunnell* v. *Read*, ibid. 586; *Middletown Savings Bank* v. *Jarvis*, 33 id. 372; *Smith* v. *Gilbert*, 71 id. 149. Such being the

case it could, as we have seen, be as effectually reached by a judgment lien.

In 1873 Mr. White gave Mrs. Beecher a lease of this property for the term of her life. The purpose of this instrument is apparent. It sought only to effectuate said trust. If it operated to change in any manner the character of Mrs. Beecher's interest, and create in her a leasehold estate, her interest still remained one which could be taken. General Statutes, Rev. 1902, § 930.

It is contended that Mrs. Beecher has an additional interest in this tract of land. It is claimed that the gift over after her life estate was void, it being similar in tenor to those hereinafter discussed, and that this remainder is therefore intestate estate. Mrs. Beecher is one of four children of her mother Nancy L. Garfield, who was the only heir at law of Sarah Maltby, her sister, whom she survived. Mrs. Garfield's estate has been duly settled and all claims against it paid. Mrs. Beecher would thus be entitled to inherit one fourth of any intestate estate of Sarah Maltby. This is claimed by the plaintiffs to be her interest in the remainder in tract number two.

We have no need to pass upon this claim. The plaintiffs, as we have seen, have a valid lien upon this land sufficient to reach Mrs. Beecher's interest, whatever it may prove to be. They are entitled to foreclose it. What quantum of title they will obtain if there is no redemption, is not in issue, and we have no occasion to inquire.

Sarah Maltby by her will devised another one fourth of her real estate inherited from her father, to said White in trust for the benefit of Josephine L. Hazelton Hill during her life. The language of the trust was identical with that in favor of Mrs. Beecher, already recited. The language creating this devise in trust being concluded, the testatrix added, " and then and after her decease I give, devise, and bequeath said fourth part to her, the said Josephine's, heirs forever." In the distribution, an undivided one-half interest in both the first and third of the pieces described in the lien were set out to Mr. White under this trust for the benefit of

Mrs. Hill, and upon her death to her heirs. The plaintiffs claim that this gift over to the heirs of Mrs. Hill was void as contravening the statute against perpetuities, and that, as Mrs. Beecher is entitled to inherit one fourth of any intestate estate of Sarah Maltby, she is the owner of an undivided one eighth of said first and third pieces, subject to the life estate for the benefit of Mrs. Hill. It is not claimed that Mrs. Beecher has any other interest in these two tracts.

It is apparent that a decision upon the claim thus made involves the construction of Sarah Maltby's will, and such construction we are asked to make. The interests involved in such construction are only in part represented in this case. Those adverse to the claim are not repesented at all. While it is quite true that any determination we might reach could not adjudicate the questions thus raised, except as affecting the rights of these plaintiffs as against these defendants, we have no disposition to unnecessarily undertake the office of construing the provisions of this will, which was probated and distribution made according thereto more than thirty years ago, in the absence of those representing the interests adverse to the claim made, and upon a statement of facts which is in legal effect an *ex parte* one. The question presented to us is largely an academic one upon the language of the will. It is not beyond the domain of possibility that facts might exist which would interpolate other considerations into it. Fortunately we have no need to determine the question propounded to us further, at most, than to ascertain whether there is *prima facie* such ground for the claim made as to justify the plaintiffs' right to a foreclosure of their lien upon this land. It is quite clear that Mrs. Beecher might, upon the facts stated, fairly make the claim to an ownership in this property which has been outlined. The plaintiffs were therefore within their rights in filing their judgment lien, and thus seeking by its foreclosure to appropriate to themselves in satisfaction of their judgment the possible title which the defendants may have in the land in question. The process, if completed, will give the plaintiffs the precise interest which the defendants have, and no more. If they

have any interest it is a vested and not a contingent one. If they have one, the plaintiffs will, in the event that there is no redemption, become substituted as the owner in their stead. What this substitution will succeed in giving to them must be left to the results of the controversy between the contending interests when they shall be brought face to face in proper litigation. It is not for us here to decide.

The Superior Court is advised to render judgment of foreclosure in favor of the plaintiffs as prayed for.

Costs in this court will be taxed in favor of the plaintiffs.

In this opinion the other judges concurred.