[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION RE: MOTION FOR SUPPLEMENTAL JUDGMENT (#130) AND MOTION FOR DETERMINATION OF PRIORITIES (#136)
I. PROCEDURAL HISTORY
By writ dated April 16, 1987, the plaintiff Union Trust Company initiated an action against the defendant Joseph Stanley Heggelund (Superior Court, Judicial District of New Haven, Docket Number 264094) and caused an attachment in the amount of $23,000 to be placed upon certain property owned by the defendant Heggelund located at 223 Gurleyville Road, Mansfield, Connecticut. The Certificate of Attachment was filed in the Mansfield Town Clerk's office on April 24, 1987 and is recorded in Volume 251 at page 399 of the land records.
On October 28, 1988, judgment was rendered for the plaintiff in the amount of $28,907.60 in damages plus $264.20 for costs (Hodgson, J.). On November 3, 1988, the judgment being wholly unsatisfied, the plaintiff filed a Certificate of Judgment Lien on the Mansfield Land Records. The Lien recited recovery of said judgment and referred to and identified the attachment which had been placed upon the defendant Heggelund's property on April 24, 1987.
By writ, summons and complaint dated March 3, 1989, and filed in this court on April 4, 1989, the plaintiff commenced this action to foreclose that judgment lien. The subject property was further encumbered by the following named defendants: Gianfranco Galluzzo; Thomas T. Lonardo, Trustee; Petrowsky Auctioneers, Inc.; and Linwood R. Clark, Jr. Said named defendants had recorded all encumbrances or documents of title after the plaintiff's attachment was filed, but prior to the filing of plaintiff's judgment Lien. CT Page 3815
On September 5, 1989, a Judgment of Foreclosure by Sale entered in the above-entitled matter, and pursuant to that judgment, a public auction took place on October 14, 1989. The proceeds of the sale amounted to $40,000.00. By order dated January 16, 1990, the court (Spada, J.) approved the sale of the premises and accepted the Supplemental Report of the Committee and Revised Committee Deed.
By Motion For Supplemental Judgment dated January 8, 1990, (Motion #130) the plaintiff Union Trust Co. seeks an order directing the clerk of the court to pay to the plaintiff the sum of $33,225.56 — that sum being the balance of funds held by the clerk of the court after the payment of Committee expenses and fees. On January 19, 1990, the defendant Linwood P. Clark, Jr. filed an Objection To [plaintiff's] Motion For Supplemental Judgment. Although all defendants had notice of plaintiff's Motion, no other defendants filed objection to plaintiff's motion. In addition, on April 23, 1990, the defendant Clark filed a Motion For Determination of Priorities And Supplemental Judgment (motion #136).
Both parties followed the proper procedure for determining how much money each party is entitled to receive. "The decree of foreclosure by sale should not adjudicate the rights of the parties to the funds realized; those rights should be determined by way of a supplemental judgment. City National Bank v. Stoeckel, 103 Conn. 732, 744, 132 A. 20." Gault v. Bacon, 142 Conn. 200, 203 (1955). Pursuant to Conn. Gen. Stat. 49-27, a determination of priorities by way of a supplemental judgment after judgment and sale is the proper method by which to determine how the proceeds of the sale should be distributed. See, Conn. Gen. Stat. 49-27.
The plaintiff Union Trust Co. maintains that it is entitled to recover the balance of funds held by the clerk of the court after the payment of Committee expenses and fees, by virtue of its judgment lien filed on the Mansfield Land Records on November 3, 1988. Plaintiff claims that the judgment lien relates back to its April 24, 1987 attachment.
None of the defendants in this case has questioned that the amount of plaintiff's claim is in excess of $35,000. The defendant Clark, however, maintains that plaintiff has established priority of debt as against other encumbrancers only to the extent of $23,000.00 — that sum being the amount of plaintiff's April 1987 attachment.
Hearing was held on May 21, 1990. Both parties have filed memoranda of law. Both attorneys, by letters dated CT Page 3816 September 11 and September 14 respectively, agreed to a sixty (60) day extension of time for the court to render its decision.
II. Issue
The issue before this court is whether the entire amount of plaintiff's judgment lien relates back to the date of the original attachment, or whether plaintiff's priority of debt as against other encumbrancers is limited to $23,000, being the amount of the original attachment.
III. Law
In Hubbell v. Kingman, 52 Conn. 17 (1884), the Connecticut Supreme Court determined that an attachment of real estate creates a lien on the property only for the amount which the officer was directed to attach, although the judgment rendered might be for a sum in excess of the original attachment. The Hubbell court reasoned:
 The power to attach property on mesne process to secure a claim not judicially established is conferred by statute, and being in derogation of the common law it should receive a strict rather than a liberal construction. . . . The statute does not declare in direct terms the limit of an incumbrance created by an attachment of real estate. Unlike personal property there is no change of possession; the attachment simply subjects the land to an incumbrance, the extent of which must be gathered from a consideration of all provisions of the statute. The form of the writ prescribed by the statute, which has always been followed, requires the plaintiff to insert in the writ the amount or value of the property which the officer is commanded to attach. This form is significant; it has a purpose. Its purpose is obvious enough in respect to personal property; it tells the officer how much to attach and by implication forbids his attaching more. It has a similar meaning in respect to real estate if it has any meaning at all; the attachment incumbers it to that extent and no more. A maximum limitation is essential in order to preserve the integrity and CT Page 3817 efficiency of our recording system. The policy of that system, which is rigidly adhered to, requires that the record shall disclose, as nearly as may be, the true state of the title and the nature and extent of the incumbrance upon it. . . . Now if such a limit is found anywhere it must be in the direction to the officer, for costs may be increased indefinitely, and the amount of damages claimed may be raised by amendment. Indefiniteness and uncertainty should not be unnecessarily tolerated; and here it is not necessary, for the amount to which the officer is commanded to attach may well be taken as a fixed and certain limit.
Hubbell v. Kingman, 52 Conn. at 19-20. Thus, the Hubbell court concluded that since the lien results from the act of the officer [as directed by plaintiff's attorney] and not from any action by the court, "[t]he court can neither originate it nor enlarge it." Id. at 20.,
 [The Lien] comes into existence and to its fullest extent when the attachment is made. It cannot be a growing quantity, increasing with the accumulation of costs and enlarging as more damages are demanded. Sound policy requires that the extent of it shall be known as soon as it exists, in order to preserve the rights of third persons and prevent unnecessary restrictions upon the sale of property. Id. at 20.
The Hubbell decision would appear to support defendant Clark's contention that the plaintiff has established priority of debt as against other encumbrancers only to the extent of plaintiff's original attachment. A review, however, of the current statutory provisions and Connecticut case law reveals that defendant Clark's contention is inapposite.
The pre-1884 statute, construed in Hubbell, empowered the plaintiff's attorney to determine the amount of the attachment without prior court approval. Thus, the plaintiff was technically unrestrained in its determination of the amount of property it would command the sheriff to attach. If, in fact, the resulting judgment was greater than the attachment, the court was precluded from increasing the attachment.
The current statute providing for prejudgment remedies CT Page 3818 is substantially different from its predecessor. Conn. Gen. Stat. 52-278a et seq. provides for a hearing by which a court shall determine whether or not a writ of attachment should issue. Furthermore, the court, in its discretion, shall determine the amount of the attachment, not the plaintiff.
In Atlas Garage Custom Builders vs. Hurley, 167 Conn. 248,251 (1974), the court stated that "[a]n attachment of property is a mode of obtaining security for the satisfaction of any judgment which the plaintiff may finally recover. . . An attaching creditor must stand upon his legal right. He claims a preference over other creditors." (quoting Morgan v. New York National Building Loan Association, 73 Conn. 151, 152-53
(1900) (emphasis added). See also, Cordoba Shipping Co., Ltd. v. Maro Shipping Ltd., 494 F. Sup. 183, 186 (D.C. Conn. 1980) (the general purpose of an attachment is to furnish security for any judgment plaintiff may receive).
Thus, the current statute, as construed by recent Connecticut decisions, contradicts the outdated Hubbell decision which held that the amount of an attachment determines the plaintiff's ultimate recovery. On the contrary, the Connecticut courts now hold that the existence of a proper attachment is the foundation for plaintiff's ability to satisfy the final judgment, whatever the ultimate amount may be.
In order for the plaintiff to be able to satisfy the judgment secured by the attachment, the plaintiff must properly record a judgment lien upon the same property. Conn. Gen. Stat. 52-380a (formerly Public Acts 1878, ch. 58 3031-3032) provides, in pertinent part:
 (a) A judgment lien, securing the unpaid amount of any money judgment, including interest and costs, may be placed on any real property by recording, in the town clerk's office in the town where the real property lies, a judgment lien certificate. . . .
 (b) From the time of the recording of the judgment lien certificate, the money judgment shall be a lien on the judgment debtor's interest in the real property described. If, within four months of judgment, the lien is placed on real property which was previously attached in the action, the lien on that property shall hold from the date of attachment, provided the judgment lien certificate CT Page 3819 contains a clause referring to and identifying the attachment, substantially in the following form: "This lien is filed within four months after judgment in the action was rendered and relates back to an attachment of real property recorded on (month) (day) (year), at ___ Volume ___ Page ___ of the ___ land records."
(Emphasis added)
In City National Bank v. Traffic Engineering Associates, Inc., 166 Conn. 195 (1974), the Connecticut Supreme Court, discussing the provisions of this statute allowing the judgment lien to relate back to the date of the original attachment, noted that a judgment lien:
 ". . .did not constitute a continuance of the attachment lien even when placed upon the property attached, but was a separate lien which, if filed upon that property and within the time fixed, would relate back to the time of the attachment. See also Ives v. Beecher, 75 Conn. 564, . . . [54 A. 207]." City National Bank v. Stoeckel, 103 Conn. 732, 736-37, 132 A. 20
quoting Beardsley v. Beecher, 47 Conn. 408; see 1 Stephenson, Conn. Civ. Proc. (2d Ed.) 52(b), p. 522, and 2 Stephenson, op. cit., 218(e), p. 937.
(Emphasis added). City National Bank v. Traffic Engineering Associates, Inc., 166 Conn. at 199-200.
The judgment lien statute is consistent with the prejudgment remedy statute. By satisfying the procedures outlined in both statutes, a plaintiff may secure the amount of its current judgment lien by relating it back to the original attachment. In effect, the judgment lien "steps into the shoes" of the attachment with respect to the priority of the claim, yet the amount of the claim is that of the judgment lien. Indeed, in Hartford Provision Co. v. U.S., 579 F.2d 7,10 (2d Cir. 1978), the court stated that under the Connecticut judgment lien statute, the "judgment's effect on an attachment is to establish the validity and determine the amount of the claim, and to preserve the lien under said attachment. . . ." (quoting Central Trust Co. v. Worcester Cycle Mfg. Co., 114 F. 659, 665 (C.C. D. Conn. 1902) (Emphasis added).
There are two additional facts which the court took into consideration in this case: CT Page 3820
 1. The defendant Clark was an attaching lien creditor, not a mortgagee. Therefore, Clark did not rely on the equity in this real estate when he became a creditor of Heggelund. In fact, when Clark recorded his judgment lien, there appeared to be several very large encumbrances on the property between the interest of Union Trust, and that of Clark; and,
 2. The defendant Clark, did not even risk his own money at the foreclosure auction. Union Trust was the successful bidder and therefore risked its funds to stake its claim. To allow Clark to have priority over a portion of Union Trust's claim, would serve to give Clark a windfall at the expense of Union Trust. This would not be equitable.
Conclusion
The attachment was granted pursuant to C.G.S. 52-278a
et seq. which provides that a judge shall determine if there is probable cause to sustain the validity of the claim and the judge sets the amount of the attachment. This secures any judgment later rendered in favor of the plaintiff. If the judgment lien is later properly filed, then the entire judgment will relate back to the date of the attachment.
Plaintiff's judgment lien of November 3, 1988, filed in accordance with the prescriptions set forth in Conn. Gen. Stat.52-380a (b), constitutes a lien which relates back to the date of the original attachment, securing the unpaid amount of the money judgment rendered in plaintiff's favor on October 28, 1988, including interest and costs thereon in its entirety.
Accordingly, the plaintiff is entitled to recover the balance of funds held by the clerk of the court. Therefore, plaintiff's motion for supplemental judgment is granted.
The defendant Clark's motion for determination of priorities is granted (procedurally). Plaintiff's priority, however, overall other defendants is found to be in the amount of its entire debt of $35,225.73, as of January 5, 1990, plus interest and costs. C.G.S. 49-27.
By the Court, Hon. Jonathan J. Kaplan