Beardsley *v.* Beecher.

LEWIS H. BEARDSLEY *vs.* EDWARD C. BEECHER, TRUSTEE.

The act of 1878 provides that a judgment creditor may place a lien for his judgment on real estate of the debtor by causing to be recorded in the town clerk's office a certificate setting forth the judgment and describing the real estate, which lien may be foreclosed or redeemed like a mortgage. Held that the lien thus acquired is not dissolved by proceedings in insolvency on the part of the debtor, under the provision of the insolvent law that such proceedings shall dissolve all attachments and all levies of executions not perfected, made on the debtor's property within sixty days next preceding.

Such a lien is a statutory mortgage rather than an attachment.

And where the lien is placed upon land that had been attached in the suit in which the judgment was rendered, it is not to be regarded as a mere continuance of the attachment.

AMICABLE SUBMISSION to the Superior Court, upon the following statement of facts.

On the 3d day of October, 1879, the plaintiff Beardsley brought a suit in assumpsit to the Court of Common Pleas in New Haven County, at its November term, 1879, against James R. Todd and Frank E. Todd, both of New Haven, copartners in business under the firm name of J. R. Todd & Son, and on the same day caused the real estate of James R. Todd, described in the certificate of lien hereinafter mentioned, and all situated in the town of New Haven, to be attached in the suit. On the 6th of November, 1879, Beardsley recovered judgment in the suit for the sum of $121.50 damages, and $19.37 costs of suit, and afterwards, on the day last mentioned, he caused the following certificate of lien to be recorded in the office of the town clerk of the town of New Haven, the same being signed by E. P. Arvine as his attorney.

"This is to certify, that Lewis H. Beardsley, of the city and town of New Haven, on the 6th day of November, 1879, in the Court of Common Pleas, in the county of New Haven, did obtain judgment in his favor against James R. Todd and Frank E. Todd, both of said city and town, copartners in business under the firm name of J. R. Todd & Son, for the sum of $121.50 damages, and $19.37 costs of suit, which judgment remains wholly unsatisfied; and to secure said sums,

and the lawful interest thereon, a judgment lien in favor of said Beardsley is hereby placed upon the following described real estate of the said James R. Todd, situate in the town of New Haven, and upon all the right, title and interest which the said James R. Todd and the said Frank E. Todd have, or • either of them has, in the same, to wit: [describing four pieces of land.] All of the above described premises being the same premises attached on mesne process in the suit in which said judgment was rendered, and said attachment having been made on the 3d day of October, 1879, as by the land records of said New Haven, and as by the files in said court will more fully appear, pursuant to the statute in such case made and provided. New Haven, November 6, 1879."

On the 17th of November, 1879, James R. Todd made an assignment of all his property pursuant to the statute relative to the settlement of the estates of insolvent debtors, to the defendant, Edward C. Beecher, in trust for the benefit of his creditors, and filed the same in the probate court for the district of New Haven, which court confirmed said Beecher as trustee of the estate. The assignment conveyed all the interest of J. R. Todd in the real estate in question, he having made no other conveyance of the same since the attachment. No other proceedings affecting the lien than those above stated have been had by either party. The lien has never been released by Beardsley, and the judgment has never been paid. At the time the suit was brought the assets of James R. Todd were insufficient to discharge his liabilities, but this fact was unknown to Beardsley.

It was agreed that if the court should decide that the lien was not discharged by operation of law, a decree should be passed foreclosing Beecher as trustee unless he should redeem within a time limited, and that if the court should decide that the lien was so discharged a decree should be passed that Beardsley should remove the lien within a time to be limited by the court. The case was reserved for the advice of this court.

The 25th section of the statute with regard to insolvent debtors provides that "the commencement of proceedings in

insolvency shall dissolve all attachments, and all levies of executions not completed, made within sixty days next preceding, on the property of the insolvent debtor." Gen. Statutes, p. 383.

The act of 1878, under which the lien in question was recorded, is as follows:

"*Sec.* 1. Any person having an unsatisfied judgment against another may cause to be recorded in the town clerk's office in any town, a certificate substantially of the form following:—[Here follows a form like the one used in the present case;] which certificate shall be recorded in the records of the town where such real estate lies.

"*Sec.* 2. Such judgment, from the time of filing such certificate, shall constitute a lien upon the real estate described therein, and if such lien be placed upon real estate attached in the suit upon which such judgment was rendered, and within four months after such judgment was rendered, it shall hold from the date of such judgment."

"*Sec.* 4. Nothing in this act contained shall be construed to authorize any such lien as to any real estate or any interest therein which might not have been levied upon under an execution on the same judgment at the date of filing such lien.

"*Sec.* 5. Any such lien may be foreclosed or redeemed in the same manner as mortgages upon the same estate."

*E. P. Arvine*, for the plaintiff, cited *Eager* v. *Price*, 2 Paige, 333; *Corning* v. *White*, id., 567; *McDermutt* v. *Strong*, 4 Johns. Ch., 691; *Hadden* v. *Spader*, 20 Johns., 554; *Caperton* v. *Martin*, 5 Ala., 217, 221; *Bond* v. *Ware*, 7 Mass., 127; *Hubbard* v. *Hamilton Bank*, 7 Met., 347; Bouvier's Law Dict., *Attachment*; Bump on Bankruptcy, 600.

*A. H. Robertson*, for the defendant.

1. It is the policy of the law that when it becomes necessary to close up the affairs of a debtor, whether at his decease or during life, all his property shall be applied to the equal payment of his debts. *Davenport* v. *Tilton*, 10 Met., 326.

Our statute in relation to estates of insolvent debtors, under which we claim that the lien of Beardsley is discharged, is to further the just distribution of a debtor's effects equally among his creditors, and is remedial in its nature, and should be liberally construed to further equal and just distribution and to prevent one creditor appropriating any part of the debtor's property for his own particular benefit. Gen. Statutes, pp. 383, 384, secs. 25, 27; *Wolcott* v. *Pond*, 19 Conn., 603; *Curtiss* v. *Barnum*, 25 id., 370; *Hawkins's Appeal from Probate*, 34 id., 548; *Bishop* v. *Fowler*, 35 id., 6; *Von Wettberg* v. *Carson*, 44 id., 287, 291; *Chicago, Burlington & Quincy R. R. Co.* v. *Dunn*, 52 Ill., 261; Potter's Dwarris on Statutes, 231, 234, 235. The interest of Beardsley must be vested and completed, so as to leave nothing to be done in order to complete his title to the property attached, to prevent the property passing to Beecher as trustee, free from the lien." *Palmer* v. *Woodward*, 28 Conn., 251.

2. The statute under which Beardsley claims to have acquired such complete interest and possession as not to be disturbed by the assignment of Todd to Beecher, is found in the Acts of 1878, ch. 58, secs. 1, 2. In order to construe this statute aright we should consider the intent of the legislature and what was sought to be accomplished by the passage of the act. Potter's Dwarris on Statutes, 237; Sedgw. on Stat. & Const. Law, 231; *French* v. *Gray*, 2 Conn., 111; 1 Swift's Dig., 11. The intent of the act was very plainly to avoid the long, expensive and technical method of levying an execution on real property, which a mistake of the officer, appraisers or justice was liable to make worthless, (*Mitchell* v. *Kirtland*, 7 Conn., 230,) by allowing the creditor after judgment to file a lien, which is in effect to continue his attachment beyond the four months allowed by statute, (Gen. Statutes, p. 404, sec. 15,) and to perfect and complete his title by foreclosure. Act of 1878, sec. 5. A levy of execution is only completed when all the requisites of the statute in relation to a levy have been complied with and the execution returned into the office of the clerk whence it issued. 1 Swift's Dig., 159. The property set off on the execution then

becomes vested absolutely in the creditor and he has the right of possession in the same. Gen. Statutes, p. 461, sec. 31; *Kellogg* v. *Wadhams*, 9 Conn., 208. Until the execution is returned and the estate vested, the execution is incomplete, and an assignment within sixty days would dissolve the levy. So in respect to a levy on personal property, an assignment within sixty days would vest the property in the trustee, unless the property had been sold and money paid over on the execution.

3. The filing of the judgment lien does not satisfy the execution; it gives to the creditor no vested or complete interest. *Watson* v. *N. Y. Central R. R. Co.*, 47 N. York, 158; 1 Washburn on Real Prop., 23, sec. 41; Phillips on Mech. Liens, §§ 26, 27; Bouvier's Law Dict., *Lien*. The lien gives to the creditor no right to enter and take possession as in the case of a mortgagee. *Huntington* v. *Smith*, 4 Conn., 237. He has merely continued his attachment, and can only have a complete right and title by foreclosing, which is but another way given by statute of levying and satisfying his execution. Having foreclosed and taken possession, his claim is satisfied and his interest vested and complete. Then and then only has he acquired such a title as not to be defeated by an assignment within sixty days.

Loomis, J. On the 3d of October, 1879, the plaintiff brought a suit against the partnership firm of James R. Todd and Son, and attached thereon certain real estate of J. R. Todd, and on the 6th day of the following month he recovered judgment for his debt and costs, and afterwards on the same day, pursuant to the statute of 1878, caused to be made and recorded in the town clerk's office a certificate of lien on the land that had been previously attached in the suit. Afterwards, on the 17th of November, J. R. Todd assigned all his property to the defendant as trustee for the benefit of his creditors, pursuant to the statute relative to insolvent debtors. And the parties by an amicable suit have presented the question, and had it reserved for the advice of this court, whether the judgment lien in favor of the plaintiff was dissolved by

the insolvency proceedings. If so dissolved, it must have been by the operation of some positive provision of the statutes, for, notwithstanding the intrinsic equity and justice of an equal distribution *pro rata* among the creditors, the law still favors the diligent creditor and protects him in his priority unless some statute otherwise directs. *Hubbard* v. *Hamilton Bank*, 7 Met., 347.

By the provisions of our statutes the commencement of insolvency proceedings will dissolve transfers and liens in two classes of cases only:—1st. All transfers made with a view to insolvency and for the purpose of preferring the party receiving the same, and with the knowledge of such party that it was so made. General Statutes, pp. 378–9, secs. 1, 3. 2d. All attachments and all levies of execution on the property of the insolvent debtor, not completed, made within sixty days next preceding. General Statutes, p. 383, sec. 25.

There is no claim that the first provision can apply to this case, and the express finding that the plaintiff had no knowledge of the insolvency of Todd removes all ground for such claim.

The only debateable question is whether the second provision applies. A judgment lien surely is not within the terms of the statute, and it is certain that the statute was not originally passed with reference to any such thing, for, until the year 1878, a judgment lien was unknown to our statutes, and it had never been adopted in any of the New England states.

But still we concede that such a lien having now been authorized by the act of 1878, if its nature is such that it is fairly within the scope and meaning of the terms used in the statute then and previously in force, the latter must be held to apply. But to give it such effect we must hold that a judgment lien is either an attachment or the continuation of an attachment.

If it had been intended merely to continue an attachment it would have been easy and natural to have said so. But such evidently was not the object, for the reason that the lien may as well be placed on any other real estate that was

not attached; the statute in terms provides that any real estate subject to the levy of an execution is subject to this lien. The fact therefore that happens to be true in this case, that the lien was placed on the same land that had been attached, is of no controlling importance. It would be absurd to construe the statutes so as to dissolve a judgment lien where there had been also a previous attachment, and to hold it good where there had been no attachment. The law will not reverse its ancient maxim and punish a creditor merely because he was diligent. Neither can we hold a judgment lien to be an attachment. The term when used without other qualification in a statute has reference to the taking and holding of the person or property on mesne process, subject either to the further order of the court or to final judgment in the case.

To make an attachment of property effectual to accomplish its object it is often necessary that the property should remain in the custody of the law for a limited period after final judgment; hence our statutes provide for a continuance of an attachment lien for four months after final judgment.

The following citations from 1 Bouvier's Law Dictionary, pages 162, 3, show that we have given the word its legitimate and proper meaning. "*Attachment.* Taking into the custody of the law the person or property of one already before the court, or of one whom it is sought to bring before it.—A writ issued at the institution or during the progress of an action, commanding the sheriff or other proper officer to attach the property, rights, credits or effects of the defendant to satisfy the demands of the plaintiff.—The original design of this writ was to secure the appearance of one who had disregarded the original summons by taking possession of his property as a pledge. 3 Black. Com., 280.—By an extension of this principle in the New England states, property attached remains in the custody of the law after an appearance and until final judgment. *Bond* v. *Ward*, 7 Mass., 128."

By reference to the statute creating the judgment lien (Acts of 1878, pp. 293, 4,) it will be seen that the lien in

question lacks the essential elements and incidents of an attachment. It is provided that "the judgment from the time of filing the certificate shall constitute a lien upon the real estate described in the certificate," and that "any such lien may be foreclosed or redeemed, in the same manner as mortgages upon the same estate." But no time is prescribed within which it must be filed; it may be at any time within the life of the judgment, except indeed when it is desired to have the lien relate back to the date of a previous attachment, in which case it must be filed within four months after the rendition of final judgment; and in this respect it is precisely like the levy of an execution. Furthermore, the lien has no limit fixed for its dissolution. Nothing is to be done by the creditor to perfect or perpetuate it, and no neglect or act on his part will forfeit his right. It is not an inchoate, but a perfected and permanent lien, unconditional in its nature, unlimited as to time, and subject to no further regulations except as to redemption and foreclosure. The interest vested in the creditor is just as permanent as a mortgage, and instead of considering it an attachment we would rather designate it a sort of statutory mortgage.

In the argument for the defendant we were referred to some authorities from other jurisdictions, showing that a judgment lien was there regarded as vesting no complete interest; and the inference sought to be drawn from the proposition was that the nature of the lien was essentially the same as that of an attachment. But the argument loses its force when we consider the marked distinction between our judgment lien and that of other states.

As far as we have been able to examine the statutes of those states the lien is universally of limited duration, and is often subject to conditions which render it a very precarious security for the creditor. In Tennessee, Virginia and Texas, the duration is only one year, unless execution is taken out and levied within that time. In California it is two years. In Missouri and Arkansas three years. In Pennsylvania five years, subject to the right of reviving it under prescribed conditions. In Illinois it is seven years, and in New York,

Beardsley *v.* Beecher.

Indiana, Iowa, Minnesota and Wisconsin ten years. In
Michigan it is five years, but is confined to certain classes of
cases. In Ohio judgments cease to operate as liens if execu-
tion does not issue within five years, and they lose their
preference against all other bonâ fide creditors if execution is
not levied in one year, unless the delay is caused by appeal,
injunction or the like.

The construction we have given to the law of 1878 we
believe is in full harmony with its spirit and letter, and with
the intention of the legislature. One prominent object of the
law was to provide a more economical, convenient and equita-
able method of enforcing a judgment and to make it for the
interest of both parties to adopt it instead of the old method.
The creditor can avoid the hazard of having his levy defeated
by some technical objection to the mode of procedure and can
rest in the confident assurance that his debt will ultimately be
paid if the premises are worth more than the judgment. And
on the other hand the debtor avoids a considerable expense
and the risk of hasty and inadequate appraisal, and the still
greater risk of having his remaining land impaired in value
by carving out and vesting irrevocably in another some part
which is perhaps greatly needed for the profitable occupation
of the rest. It is also a great benefit to the debtor to have
time to redeem and to have it in his power to repossess him-
self of his property by paying the amount of the judgment.

It is quite true that the law does not compel the creditor to
enforce his judgment exclusively by filing and pursuing his
lien. It is optional with him to pursue the old method of
levying his execution. But where the property of the debtor
consists of land, we believe, for reasons already suggested,
that he will prefer to take his judgment lien. And this leads
us further to remark, that if we should adopt the defendant's
construction of the statute, it would practically defeat its
beneficent object, to the injury of both the immediate parties
to the judgment, without any resulting benefit to the general
creditors of the insolvent.

As the levy on the real estate can usually be completed in
a day and the title thus be made indefeasible in the creditor,

he would never knowingly consent to take instead a simple lien which any subsequent assignment in insolvency within sixty days would destroy.

In the present case the plaintiff had eleven days to perfect and complete the levy of an execution, and it is certain that if he had been shut up to the alternative suggested he would have adopted that mode in order to make his title indefeasible.

The Court of Common Pleas is advised that the lien in question was not discharged by operation of law, and that judgment should be rendered for the plaintiff.

In this opinion the other judges concurred.