# RICHARD STEVENS ET AL. *v.* AETNA LIFE AND CASUALTY COMPANY (15062)

CALLAHAN, NORCOTT, KATZ, PALMER and LAVERY, Js.

Argued December 8, 1994—decision released June 13, 1995

*Kathryn Calibey,* for the appellants (plaintiffs).

*Eugene A. Cooney,* with whom was *Rodd J. Mantell,* for the appellee (defendant).

PALMER, J. This case requires us to decide whether a judgment from which an appeal is pending constitutes a "final judgment" under § 3 of No. 93-77 of the 1993 Public Acts (P.A. 93-77).[1] We conclude that a judgment

---

[1] Public Acts 1993, No. 93-77, entitled "An Act Concerning Uninsured and Underinsured Motorists Insurance Coverage," provides:

"Section 1. Section 38a-290 of the general statutes is repealed and the following is substituted in lieu thereof:

"No insurance company doing business in this state shall limit the time within which any suit shall be brought against it or [, with respect to subdivision (d) of this section,] any claim shall be submitted to arbitration on (a) a fidelity or surety bond to a period less than three years from the time when the loss insured against occurs; (b) a construction performance bond to a period less than three years from the date on which the principal last performed work under the contract; (c) a construction payment bond to a period less than three years from the date on which the claimant last performed work or supplied material for which the claim is made; [(d) the uninsured motorist provisions of a motor vehicle insurance policy to a period less than two years from the date of the accident;] and [(e)] *(d)* all other policies to a period less than one year from the time when the loss insured against occurs. THIS SECTION SHALL NOT APPLY TO SUITS AND ARBITRATION CLAIMS UNDER THE UNINSURED OR UNDERINSURED MOTORIST PROVISIONS OF A MOTOR VEHICLE INSURANCE POLICY.

"Sec. 2. Section 38a-336 of the general statutes is repealed and the following is substituted in lieu thereof:

"(a) (1) Each automobile liability insurance policy shall provide insurance, herein called uninsured motorist coverage, in accordance with the regulations adopted pursuant to section 38a-334, with limits for bodily injury or death not less than those specified in subsection (a) of section 14-112, for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles and underinsured motor vehicles and insured motor vehicles, the insurer of which becomes insolvent prior to payment of such damages, because of bodily injury, including death resulting therefrom. Each insurer licensed to write automobile liability insurance in this state shall provide uninsured motorists coverage with limits requested by the named insured upon payment of the appropriate premium, but the insurer shall not be required to

is not final within the meaning of § 3 of P.A. 93-77 until the case has been finally resolved after a timely appeal.

provide such coverage with limits in excess of the limits of the bodily injury coverage of the policy issued to the named insured. No insurer shall be required to provide uninsured motorist coverage to (A) a named insured or relatives residing in his household when occupying, or struck as a pedestrian by, an uninsured or underinsured motor vehicle or a motorcycle that is owned by the named insured, or (B) to any insured occupying an uninsured or underinsured motor vehicle or motorcycle that is owned by such insured.

"(2) Notwithstanding any provision of this section to the contrary, each automobile liability insurance policy issued or renewed on and after July 1, 1984, shall provide uninsured motorist coverage with limits for bodily injury and death equal to those purchased to protect against loss resulting from the liability imposed by law unless the insured requests in writing a lesser amount, but not less than the limits specified in subsection (a) of section 14-112. Such written request shall apply to all subsequent renewals of coverage and to all policies or endorsements which extend, change, supersede or replace an existing policy issued to the named insured, unless changed in writing by the insured.

"(b) An insurance company shall be obligated to make payment to its insured up to the limits of the policy's uninsured motorist coverage after the limits of liability under all bodily injury liability bonds or insurance policies applicable at the time of the accident have been exhausted by payment of judgments or settlements, but in no event shall the total amount of recovery from all policies, including any amount recovered under the insured's uninsured motorist coverage, exceed the limits of the insured's uninsured motorist coverage.

"(c) Each automobile liability insurance policy issued on or after October 1, 1971, which contains a provision for binding arbitration shall include a provision for final determination of insurance coverage in such arbitration proceeding. With respect to any claim submitted to arbitration on or after October 1, 1983, the arbitration proceeding shall be conducted by a single arbitrator if the amount in demand is forty thousand dollars or less or by a panel of three arbitrators if the amount in demand is more than forty thousand dollars.

"(d) For the purposes of this section, an 'underinsured motor vehicle' means a motor vehicle with respect to which the sum of the limits of liability under all bodily injury liability bonds and insurance policies applicable at the time of the accident is less than the applicable limits of liability under the uninsured motorist portion of the policy against which claim is made under subsection (b) of this section.

"*(e)* NO INSURANCE COMPANY DOING BUSINESS IN THIS STATE MAY LIMIT THE TIME WITHIN WHICH ANY SUIT MAY BE

Because the judgment of the trial court was predicated on a contrary interpretation of P.A. 93-77, we reverse.

The relevant facts and procedural history are undisputed. On August 8, 1989, the plaintiffs, Richard Stevens and Sonia Stevens, sustained injuries while traveling in an automobile[2] that was struck by a vehicle operated by Michael Harris.[3] On October 29, 1990,

BROUGHT AGAINST IT OR ANY DEMAND FOR ARBITRATION ON A CLAIM BE MADE ON THE UNINSURED OR UNDERINSURED MOTORIST PROVISIONS OF A MOTOR VEHICLE POLICY TO A PERIOD OF LESS THAN THREE YEARS FROM THE DATE OF ACCIDENT, PROVIDED, IN THE CASE OF AN UNDERINSURED MOTORIST CLAIM THE INSURED MAY TOLL ANY APPLICABLE LIMITATION PERIOD (1) BY NOTIFYING SUCH INSURER PRIOR TO THE EXPIRATION OF THE APPLICABLE LIMITATION PERIOD, IN WRITING, OF ANY CLAIM WHICH THE INSURED MAY HAVE FOR UNDERINSURED MOTORIST BENEFITS AND (2) BY COMMENCING SUIT OR DEMANDING ARBITRATION UNDER THE TERMS OF THE POLICY NOT MORE THAN ONE HUNDRED EIGHTY DAYS FROM THE DATE OF EXHAUSTION OF THE LIMITS OF LIABILITY UNDER ALL AUTOMOBILE BODILY INJURY LIABILITY BONDS OR AUTOMOBILE INSURANCE POLICIES APPLICABLE AT THE TIME OF THE ACCIDENT BY SETTLEMENTS OR FINAL JUDGMENTS AFTER ANY APPEALS.

"Sec. 3. (New) No uninsured or underinsured motorist claim or action pending on December 8, 1992, or brought after said date and prior to the effective date of this act, in which a settlement has not been reached or a final judgment has not been rendered prior to the effective date of this act, shall fail by reason of any contractual limitation in a motor vehicle insurance policy which limits the time within which such claim shall be submitted to arbitration or such action shall be commenced to a period of time less than that allowed under section 38a-336 of the general statutes, as amended by section 2 of this act.

"Sec. 4. This act shall take effect from its passage."

Section 3 of P.A. 93-77 has not been codified because it is deemed to be special in nature.

[2] Richard Stevens was driving the car in which his wife, Sonia Stevens, was a passenger.

[3] Harris fled on foot from the scene of the accident. Upon his apprehension by the police, Harris denied that he was driving the vehicle when it struck the plaintiffs' automobile. The investigating officer, however, con-

the plaintiffs commenced an action against Harris, seeking damages stemming from the collision. Harris failed to appear in the action, and a default judgment was rendered against him. On November 11, 1991, after the entry of the default, the plaintiffs' investigator learned that Harris' insurance policy had been canceled prior to the date of the accident and, consequently, that Harris was uninsured.

The plaintiffs were insured under an automobile liability policy issued to them by the defendant, Aetna Life and Casualty Company. The policy, as required by law,[4] provided coverage, inter alia, for injuries and damages sustained as a result of the negligence of an owner or operator of an uninsured motor vehicle. The uninsured motorist provisions of the policy required an insured to file a claim within two years from the date of an accident. The plaintiffs did not commence this action for uninsured motorist benefits, however, until November 20, 1991, more than two years and three months after the accident.

The defendant moved for summary judgment on the ground that the plaintiffs' action was barred by the two year limitation period of the policy.[5] The trial court granted the defendant's motion on November 6, 1992, and the plaintiffs filed a timely appeal to the Appellate Court.[6] The plaintiffs thereafter sought an order

cluded that Harris was, in fact, operating the vehicle when it collided with the plaintiffs' automobile, and that his negligent operation caused the accident.

[4] See General Statutes (Rev. to 1989) § 38-175c, now revised and recodified as § 38a-336.

[5] The plaintiffs claimed, inter alia, that they were excused from complying with the policy's two year limitation period because their failure to do so had not materially prejudiced the defendant. See *Aetna Casualty & Surety Co.* v. *Murphy*, 206 Conn. 409, 418-20, 538 A.2d 219 (1988).

[6] The plaintiffs did not file their appeal until February 11, 1993. Because the parties were not notified of the judgment of the trial court until Janu-

of the Appellate Court requiring the trial court to articulate the legal and factual bases underlying its judgment. The Appellate Court granted the plaintiffs' motion and, on June 10, 1993, the trial court rendered its articulation, explaining that the plaintiffs' claim for uninsured motorist benefits was barred by the two year limitation period of the policy.

Public Act 93-77 became law on May 20, 1993, during the pendency of the plaintiffs' appeal.[7] The plaintiffs thereupon filed a motion requesting the trial court to open its judgment,[8] claiming that their right to bring

---

ary 25, 1993, however, the appeal was properly filed "within twenty days . . . from the issuance of notice of the rendition of the judgment. . . ." Practice Book § 4009.

[7] Public Act 93-77 was enacted in response to two decisions of this court rendered on December 8, 1992, *McGlinchey* v. *Aetna Casualty & Surety Co.*, 224 Conn. 133, 617 A.2d 445 (1992), and *Hotkowski* v. *Aetna Life & Casualty Co.*, 224 Conn. 145, 617 A.2d 451 (1992), wherein we concluded that an insurer was entitled to enforce an unambiguous policy provision requiring an insured to file a claim for uninsured or underinsured motorist benefits within two years from the date of the accident, even though the insured had not, within that time period, exhausted the liability limits of the tortfeasor's policy. Prior to the publication of *McGlinchey* and *Hotkowski*, some insureds, in the good faith but mistaken belief that they were required by statute to ascertain and exhaust the tortfeasor's coverage prior to initiating an uninsured or underinsured motorist claim; see footnote 14; had failed to file such a claim within the two year period prescribed by the policy. See 36 H.R. Proc., Pt. 8, 1993 Sess., p. 2757, remarks of Representative Dale W. Radcliffe ("everyone had thought one had to exhaust, under the [governing] statute, all policies applicable at the time of the accident . . . before bringing a [claim for uninsured or underinsured motorist benefits]"); see also Conn. Joint Standing Committee Hearings, Judiciary, Pt. 2, 1993 Sess., pp. 525, 541–47, remarks of William F. Gallagher. Section 3 of P.A. 93-77 was intended to restore to those insureds the right to recover uninsured or underinsured motorist benefits to which they otherwise would have been entitled had they not failed to file a claim within the contractual two year period. See *Serrano* v. *Aetna Ins. Co.*, 233 Conn. 437, 455, 664 A.2d 279 (1995).

[8] The plaintiffs filed their motion to open the judgment after the trial court had rendered its articulation on June 10, 1993.

an action for uninsured motorist benefits had been restored by § 3 of P.A. 93-77, which provides, inter alia, that no uninsured or underinsured motorist action pending on December 8, 1992, in which a settlement has not been reached or a final judgment has not been rendered prior to May 20, 1993, shall fail by reason of any policy provision limiting the time within which such action shall be commenced to less than the three year period, with tolling provisions, allowed under General Statutes § 38a-336, as amended by § 2 of P.A. 93-77. See footnote 1. The trial court denied the plaintiffs' motion to open on the ground that its judgment of November 6, 1992, constituted a "final judgment" within the meaning of § 3 of P.A. 93-77, thereby barring any recovery by the plaintiffs. The case was thereafter returned to the docket of the Appellate Court,[9] and we subsequently transferred the appeal to this court pursuant to Practice Book § 4023 and General Statutes § 51-199 (c).

On appeal, the plaintiffs claim that because a judgment is not final under § 3 of P.A. 93-77 until the action has been finally concluded on timely appeal, the trial court improperly denied their motion to open. We agree and, accordingly, we reverse the judgment of the trial court.[10]

Our resolution of the plaintiffs' claim depends upon the meaning of the term "final judgment" in the context of § 3 of P.A. 93-77. The plaintiffs claim that the term "final judgment" means a judgment after the final

---

[9] The plaintiffs properly supplemented the record on appeal to include the trial court's ruling on the motion to open the judgment.

[10] The plaintiffs also appeal from the ruling of the trial court that they had failed to establish excusable noncompliance with the contractual two year limitation period. Because we conclude that § 3 of P.A. 93-77 precludes the defendant from enforcing the two year limitation period of the policy, we need not reach this claim.

adjudication of a case on timely appeal. Under this interpretation of the statutory language, the plaintiffs' right to seek uninsured motorist benefits was restored by § 3 of P.A. 93-77 because their action was pending at all times relevant thereunder. The defendant, on the other hand, contends that a judgment is final for the purposes of § 3 of P.A. 93-77 the moment the right of appeal attaches thereto. Under the defendant's construction, the plaintiffs' action falls outside the purview of § 3 of P.A. 93-77 because the summary judgment rendered by the trial court on November 6, 1992, was an immediately appealable final judgment.[11] Since § 3 of P.A. 93-77 does not itself define the term "final judgment," we need to determine which of these two, facially plausible, interpretations is correct.[12]

"In the absence of universally applicable rules, we have recognized that the relationship between a pending appeal and a judgment depends upon the nature of the issue that is to be addressed." *Capalbo* v. *Planning & Zoning Board of Appeals*, 208 Conn. 480, 487–88, 547 A.2d 528 (1988). Because "the term 'final judgment' may have different meanings in different contexts"; *Connecticut Bank & Trust Co.* v. *Winters*, 225 Conn. 146, 158, 622 A.2d 536 (1993); we have taken a functional approach in our construction of the term,

---

[11] The defendant also claims that because the trial court had rendered summary judgment against the plaintiffs on November 6, 1992, the plaintiffs' action was not "pending on December 8, 1992," as required by § 3 of P.A. 93-77. As we explain hereinafter, however, the judgment of the trial court did not finally conclude the plaintiffs' action because it was not a "final judgment" under § 3 of P.A. 93-77. The case was therefore "pending on December 8, 1992," within the meaning of § 3 of P.A. 93-77.

[12] "[T]he effect of a pending appeal upon an otherwise final judgment has aptly been characterized as [o]ne of the most troublesome problems in applying the rule of finality [of judgments], because this is an area in which [t]here are no technically precise and universally recognized rules . . . ." (Internal quotation marks omitted.) *Connecticut Bank & Trust Co.* v. *Winters*, 225 Conn. 146, 158, 622 A.2d 536 (1993).

eschewing the application of inflexible rules in favor of a contextual analysis. *Capalbo* v. *Planning & Zoning Board of Appeals*, supra, 487. Accordingly, in determining the meaning of the term "final judgment" in the context of a particular statute, we are guided by the same considerations that inform our construction of statutes generally. Our fundamental objective, therefore, "is to ascertain and give effect to the apparent intent of the legislature. . . . In seeking to discern that intent, we look to the words of the statute itself, to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter. . . ." (Citations omitted; internal quotation marks omitted.) *State* v. *Metz*, 230 Conn. 400, 409, 645 A.2d 965 (1994); *Fleming* v. *Garnett*, 231 Conn. 77, 91–92, 646 A.2d 1308 (1994). Upon application of these well established principles, we are persuaded that there is no final judgment within the meaning of § 3 of P.A. 93-77 until the final resolution of a case after timely appeal to an appellate court.[13]

Our construction of § 3 of P.A. 93-77 finds support both in its legislative history and in the policy that its passage was intended to promote. Section 3 of P.A. 93-77 was enacted to provide relief to insureds who, in good faith reliance on a complex and apparently misleading statutory scheme, had failed to file a claim for uninsured or underinsured motorist benefits within the two year contractual limitation period, thereby forfeiting their right to do so under our decisions in *McGlinchey* v. *Aetna Casualty & Surety Co.*, 224 Conn. 133, 617 A.2d 445 (1992), and *Hotkowski* v. *Aetna Life &*

---

[13] The Appellate Court recently reached the same conclusion in *Aetna Life & Casualty Co.* v. *Braccidiferro*, 34 Conn. App. 833, 840–41, 643 A.2d 1305 (1994), cert. granted, 232 Conn. 901, 651 A.2d 743 (1995).

*Casualty Co.*, 224 Conn. 145, 617 A.2d 451 (1992). See footnote 7. The statutory construction urged by the plaintiffs, therefore, would promote the fundamental objective of the legislature, namely, to restore to those insureds the right to recover uninsured or underinsured motorist benefits in cases that had not been finally concluded prior to May 20, 1993. By contrast, the interpretation propounded by the defendant would frustrate that legislative purpose by limiting the number of injured victims eligible for relief under § 3 of P.A. 93-77. Furthermore, as remedial legislation, P.A. 93-77 must be afforded a liberal construction in favor of those persons, the plaintiffs among them, whom the legislature manifestly intended to benefit. See *Concept Associates, Ltd.* v. *Board of Tax Review*, 229 Conn. 618, 623, 642 A.2d 1186 (1994).

The debate on P.A. 93-77 in the House of Representatives sheds further light upon the meaning of the term "final judgment" in the context of § 3 of the act. During that debate, Representative Dale W. Radcliffe raised a question concerning the applicability of § 3 of P.A. 93-77 to an action in which summary judgment had been rendered. As the following remarks indicate, the response of Representative Cameron C. Staples, a proponent of the proposed legislation, squarely supports the conclusion that the judgment rendered in this case was not a final judgment within the meaning of P.A. 93-77. Representative Radcliffe stated: "[T]he language of the amendment, I'm specifically concerned with Section 3, deals with claims pending on December 8, 1992 or brought after that date. If an action were pending on December 8, 1992, and between December 8, 1992 and the effective date of this act, were dismissed by a court on a motion for summary judgment . . . could that case be resurrected under . . . the language of this statute?" Representative Staples responded: "[Y]es, under that statute this matter could

be reclaimed." 36 H.R. Proc., Pt. 8, 1993 Sess., p. 2744. Under this interpretation of the statute, which was not challenged during the ensuing floor debate, a summary judgment could not be a "final judgment" within the meaning of § 3 of P.A. 93-77, because, if it were, the opening of the judgment would be barred, contrary to the construction articulated by Representative Staples, under the express terms of § 3.

This construction of § 3 of P.A. 93-77 also is supported by the language of § 2 (e) of P.A. 93-77; see footnote 1; which, inter alia, permits the tolling of any contractual limitation period for the filing of an underinsured motorist claim while an insured is seeking to ascertain and exhaust the liability limits of the tortfeasor's policy.[14] An insured who has otherwise satisfied the requirements of subsection (e) of § 2 of P.A. 93-77 need not file an underinsured motorist claim until one hundred eighty days "from the date of exhaustion of the limits of liability under all . . . automobile insurance policies applicable at the time of the accident by settlements or *final judgments after any appeals.*"[15] (Emphasis added.) Because both § 2 (e) and § 3 of P.A. 93-77 were enacted to remedy problems arising from

[14] Under General Statutes § 38a-336 (b); see footnote 1; an insured may recover uninsured or underinsured motorist benefits only after exhausting the liability limits of the tortfeasor's policy. See *Continental Ins. Co.* v. *Cebe-Habersky*, 214 Conn. 209, 212–13, 571 A.2d 104 (1990). As we noted in *McGlinchey* v. *Aetna Casualty & Surety Co.*, supra, 224 Conn. 141 n.7, and *Hotkowski* v. *Aetna Life & Casualty Co.*, supra, 224 Conn. 150 n.6, however, an insured may commence an action for underinsured motorist benefits prior to exhausting the liability limits of the tortfeasor's policy.

[15] Subsection (e) of § 2 of P.A. 93-77 was passed, inter alia, to avoid the possibility of unnecessary litigation resulting from the filing of underinsured motorist claims prior to the exhaustion of the limits of the tortfeasor's policy. See 36 H.R. Proc., Pt. 8, 1993 Sess., p. 2759, remarks of Representative Dale W. Radcliffe; Conn. Joint Standing Committee Hearings, Judiciary, Pt. 2, 1993 Sess., pp. 543, 545–46, remarks of William F. Gallagher; see also *McGlinchey* v. *Aetna Casualty & Surety Co.*, supra, 224 Conn. 141–42 (*Berdon, J.,* dissenting).

the statutory exhaustion requirements,[16] we see no reason to presume that the legislature intended for the term "final judgment" to be interpreted differently in the two sections; see *Red Rooster Construction Co. v. River Associates, Inc.*, 224 Conn. 563, 570, 620 A.2d 118 (1993) ("[a] court should interpret a statutory scheme as a whole with a view toward reconciling its separate parts in order to render a reasonable overall interpretation"); and there is nothing in the legislative history of P.A. 93-77 to suggest otherwise.

Finally, our decision in *Capalbo v. Planning & Zoning Board of Appeals*, supra, 208 Conn. 480, wherein we construed the term "final judgment" in a statutory setting nearly identical to that presented here, provides persuasive authority for the conclusion that a judgment is not final within the meaning of § 3 of P.A. 93-77 until the conclusion of a pending appeal from that judgment. In *Capalbo*, we were required to determine whether a judgment on timely appeal constituted a "final judgment" within the meaning of § 3 of No. 88-79 of the 1988 Public Acts (P.A. 88-79),[17] which was passed in response to our decisions in *Simko v. Zoning Board of Appeals*, 205 Conn. 413, 533 A.2d 879 (1987), and *Simko v. Zoning Board of Appeals*, 206 Conn. 374, 538 A.2d 202 (1988), that a zoning appeal was subject to dismissal unless both the clerk of the zoning board or commission *and* the clerk of the municipality were cited and served as parties. The trial court in *Capalbo* had rendered judgment against the plaintiffs, prior to the effective date of P.A. 88-79, for failing to cite the town

---

[16] See footnotes 7 and 15.

[17] Section 3 (a) of No. 88-79 of the 1988 Public Acts provides in relevant part: "Any appeal of a decision of a zoning commission . . . taken on or after October 1, 1985 and prior to December 1, 1987 in which a final judgment has not been entered prior to the effective date of this act, otherwise valid except that the party taking such appeal failed to name the clerk of the municipality as a party to the appeal in the appeal citation, is validated."

clerk as a party to the action. The plaintiffs appealed, claiming that the legislature intended to include cases on timely appeal within the ambit of P.A. 88-79, which had become law during the pendency of the plaintiffs' appeal from the judgment of the trial court. The defendants urged a contrary construction of § 3 of P.A. 88-79, claiming that the judgment of the trial court was a "final judgment" within the meaning of the validating act. In light of the legislature's "overarching purpose of ensuring a hearing and decision on the merits for zoning appeals otherwise subject to dismissal on *Simko* grounds"; *Capalbo* v. *Planning & Zoning Board of Appeals*, supra, 486–87; we concluded that a judgment is not final under § 3 of P.A. 88-79 until the final resolution of a case on timely appeal to an appellate court. Id., 489. Because both the language and purpose[18] of § 3 of P.A. 93-77 are markedly similar to that of § 3 of P.A. 88-79, we likewise are compelled to conclude that the summary judgment rendered by the trial court was not a final judgment under § 3 of P.A. 93-77.[19]

---

[18] In fact, the legislative history of P.A. 93-77 contains several references to the comparable remedial action taken by the legislature after our *Simko* decisions. See Conn. Joint Standing Committee Hearings, Judiciary, Pt. 2, 1993 Sess., pp. 526, 528, remarks of Representative Richard D. Tulisano; id., pp. 525–26, remarks of William F. Gallagher.

[19] *Connecticut Bank & Trust Co.* v. *Winters*, supra, 225 Conn. 146, upon which the defendant relies, is not to the contrary. In *Winters*, we construed the term "final judgment" in the context of General Statutes § 52-141 (b) (4), which provides that a defendant against whom a tort judgment has been rendered must make any request to set off the judgment against a debt owed to the defendant by the plaintiff within twenty-four hours of a "final judgment" on the tort claim. We concluded that a trial court judgment is a "final judgment" under § 52-141 (b) (4) because, in light of the statute's underlying policy and purpose, "it would be inappropriate for the timeliness of a complaint for setoff to depend upon a retrospective, artificial determination of the finality of the trial court judgment. Such a case-by-case approach would create uncertainty and confusion regarding both the procedural obligations of the litigants and the financial outcome in a case in which the defendant seeks to set off a tort judgment rendered against it." Id., 159. We further noted that a contrary interpretation would "create an unpredictable and thereby unworkable rule," a result inconsistent with

We conclude, therefore, that a judgment is not final under § 3 of P.A. 93-77 until the final resolution of the action on timely appeal. Because the judgment of the trial court was not a "final judgment" within the meaning of § 3 of P.A. 93-77, the plaintiffs were entitled to relief thereunder. Accordingly, the trial court improperly denied the plaintiffs' motion to open the judgment.[20]

The judgment is reversed and the case is remanded for further proceedings consistent with this opinion.

In this opinion the other justices concurred.

---

the statutory purpose. Id., 161. Our conclusion in *Winters* is entirely consistent with that of *Capalbo* v. *Planning & Zoning Board of Appeals*, supra, 208 Conn. 480, because, in each case, our construction of the term "final judgment" was required by the particular context in which the term was employed. Because the same contextual considerations that guided our interpretation of P.A. 88-79 in *Capalbo* are also present here, we reach the same result.

[20] The defendant claims, as alternate grounds for affirmance, that § 3 of P.A. 93-77 modifies its vested contract rights in violation of the due process clause of the fourteenth amendment to the United States constitution, the contract clause of article one, § 10, of the United States constitution, and article first, § 1, of the Connecticut constitution. We have today fully considered the identical claims in *Serrano* v. *Aetna Ins. Co.*, 233 Conn. 437, 445–46, 664 A.2d 279 (1995), and found them to be without merit. Although *Serrano* required us to address those constitutional claims in the context of an action for underinsured motorist benefits, the same general considerations that governed our resolution of the issues in *Serrano* have applicability to cases involving claims for uninsured motorist benefits. Moreover, the defendant has not sought to identify any constitutionally significant distinction between the two types of claims. Accordingly, we reject the defendant's constitutional challenge to § 3 of P.A. 93-77.