## MAC'S CAR CITY, INC. *v.* PELINO S. DILORETO ET AL.
### (15340)

Peters, C. J., and Berdon, Norcott, Katz and Palmer, Js.

Argued June 5—officially released July 23, 1996

*Michael P. Barry*, for the appellant (plaintiff).

*Vincent F. Sabatini*, with whom was *Sandra R. Baker*, for the appellees (defendants).

PETERS, C. J. General Statutes §§ 52-328 (b) and 52-380a (b),[1] require a creditor to file a judgment lien within four months of a "final judgment" if that lien is to relate back, for purposes of priority, to an earlier prejudgment attachment. In this certified appeal, we must decide whether the occurrence of such a "final judgment" is affected by appellate affirmance or reversal of the judgment of a trial court. The plaintiff, Mac's Car City, Inc., brought suit against the defendants,[2] Pelino S. DiLoreto and Joanne DiLoreto, to foreclose a judgment lien. After determining that the judgment lien had been timely filed, the trial court granted the plaintiff's motion for summary judgment, and rendered a judgment of foreclosure by sale against the defendants. Disagreeing about the timeliness of the plaintiff's filing, the Appellate Court reversed the judgment of the trial court, and remanded the case for further trial court proceedings. *Mac's Car City, Inc.* v. *DiLoreto*, 39 Conn. App. 518, 522–23, 664 A.2d 1181 (1995). We granted the plaintiff's petition for certification to appeal,[3] and we now affirm the judgment of the Appellate Court.

[1] General Statutes §§ 52-328 and 52-380a together provide a four month period after final judgment in which a prevailing party may file a judgment lien so that the lien relates back to the prejudgment attachment. See footnote 6.

General Statutes § 52-328 provides in relevant part: "Duration of attachment liens after judgment. . . .

"(b) No real estate that has been attached may be held subject to the attachment to respond to the judgment obtained in the suit, either against the debtor or any other creditor, unless the judgment creditor places a judgment lien on the real estate within four months after a final judgment."

General Statutes § 52-380a provides in relevant part: "Judgment lien on real property. . . .

"(b) . . . . If, within four months of judgment, the lien is placed on real property which was previously attached in the action, the lien on that property shall hold from the date of attachment . . . ."

[2] The action to foreclose on a judgment lien was brought against Pelino S. DiLoreto, Joanne DiLoreto and a number of other parties having interests in the property that was subject to the lien. The only defendants involved in this appeal are the DiLoretos. We refer to them in this opinion as the defendants.

[3] We granted the plaintiff's petition for certification to appeal, limited to the following issue: "What is the proper time for filing a judgment lien,

The opinion of the Appellate Court describes the relevant facts. "This appeal arises out of more than fifteen years of litigation commencing with a contract action filed by the plaintiff against Pelino S. DiLoreto on June 6, 1980. At the time the action was filed, the plaintiff obtained an ex parte prejudgment attachment of Pelino S. DiLoreto's interest in real property located [in] Wethersfield. The property was owned by Pelino S. DiLoreto and his wife, Joanne DiLoreto, at the time of the attachment in 1980. On February 27, 1984, Pelino S. DiLoreto quitclaimed his interest in the property . . . to his wife, making Joanne DiLoreto the sole owner of the property.

"On March 31, 1984, following trial, the court rendered judgment in favor of the plaintiff [the first judgment]. The plaintiff took no action to preserve the interest secured by the prejudgment attachment. Pelino S. DiLoreto appealed, and, on September 22, 1987, [the Appellate Court] reversed the judgment of the trial court on evidentiary grounds and remanded the case for a new trial. *Mac's Car City, Inc.* v. *DiLoreto*, 12 Conn. App. 468, 471–77, 531 A.2d 177 (1987).

"On July 16, 1990, following a second trial, judgment was rendered in favor of the plaintiff [the second judgment]. Pelino S. DiLoreto timely appealed to [the Appellate Court]. On October 2, 1990, the plaintiff, for the first time, filed a certificate of judgment lien on the property . . . . Thereafter, on May 28, 1991, [the Appellate Court] affirmed the judgment of the trial court. *Mac's Car City, Inc.* v. *DiLoreto*, 24 Conn. App. 839, 591 A.2d 831, cert. denied, 220 Conn. 903, 593 A.2d 968 (1991)." *Mac's Car City, Inc.* v. *DiLoreto*, supra, 39 Conn. App. 519–20.

under General Statutes § 52-328 (b), to perfect a prejudgment attachment lien previously filed, when the original judgment in favor of the attaching lienor is reversed on appeal?" *Mac's Car City, Inc.* v. *DiLoreto*, 235 Conn. 936, 668 A.2d 375 (1995).

In the present action, the plaintiff seeks to foreclose on the judgment lien that it filed after the second judgment. The trial court granted the plaintiff's motion for summary judgment, concluding that its judgment lien related back to the prejudgment attachment. Specifically, the trial court concluded that the plaintiff's failure to file a judgment lien within four months of the first judgment did not dissolve the prejudgment attachment because the reversal of the first judgment on appeal necessarily undermined the finality of that judgment. The trial court rendered a judgment of foreclosure by sale, from which the defendants appealed to the Appellate Court.[4] The Appellate Court reversed, concluding that §§ 52-328 (b) and 52-380a (b) require a judgment lien to be filed within four months of the trial court's initial judgment, regardless of the pendency of an appeal. Id., 521–22.

On appeal to this court, the plaintiff claims that, in order to relate back to the prejudgment attachment, a judgment lien must be filed within four months of the trial court's judgment only if an appeal therefrom is not taken or, if taken, is unsuccessful.[5] Under this interpretation of the relevant statutes, the judgment lien filed by the plaintiff within four months of the second judgment would relate back to the prejudgment attachment. The defendants, to the contrary, urge us to construe the statutes to require a judgment lien to be filed within four months of the trial court's judgment, regardless of

---

[4] "On April 21, 1993, the defendants appealed from the trial court's granting of summary judgment. The appeal was dismissed as premature. *Mac's Car City, Inc.* v *DiLoreto*, 33 Conn. App. 131, 634 A.2d 1187 (1993)." *Mac's Car City, Inc.* v. *DiLoreto*, supra, 39 Conn. App. 520 n.2.

[5] In the alternative, the plaintiff asks this court to hold that the four month time period for filing a judgment lien is tolled by the pendency of an appeal. Although § 52-328 (d) provides for the tolling of the period for execution, this provision does not toll the time period for filing a judgment lien. Cf. *Hobbs* v. *Simmonds*, 61 Conn. 235, 239, 23 A. 962 (1891) (concluding that judgment lien filed while execution had been stayed is valid).

the pendency of an appeal. Under this interpretation, the judgment lien filed by the plaintiff after the second judgment would have been filed too late to relate back to the prejudgment attachment. We agree with the defendants.

Our resolution of this issue turns on a proper construction of the statutory phrase "final judgment" for the purpose of a judgment lien predicated upon a prejudgment attachment. See General Statutes §§ 52-328 (b) and 52-380a (b).[6] In determining the meaning of that phrase "we are guided by the same considerations that inform our construction of statutes generally. Our fun-

---

[6] Section 52-380a (b) was first enacted in 1878 as part of the creation of a comprehensive procedure for judgment liens. Public Acts 1878, c. LVIII, § 2. The statute has remained substantially unchanged.

Section 52-328 (b), also relied upon by the parties and the Appellate Court, was enacted prior to 1878 as part of the statutory scheme providing for the levy of execution. See *City National Bank* v. *Stoeckel*, 103 Conn. 732, 738, 132 A. 20 (1926). In 1875, the precursor to § 52-328 (b) provided in relevant part: "No estate, which has been attached, shall be held to respond to the judgment obtained in the suit, either against the debtor or any other creditor, unless the judgment creditor *shall take out an execution and have it . . . levied on the real estate attached,* and the same appraised, and the execution and proceedings thereon recorded within four months after [final] judgment . . . ." (Emphasis added.) General Statutes (1875 Rev.) title 19, c. 2, § 15. This statute remained virtually unchanged until 1983, when the legislature repealed the statutes relating to the levy of execution. Public Acts 1983, No. 83-581, § 39; see Public Acts 1984, No. 84-546, § 127.

Although a levy of execution on real estate is no longer available in this state, the legislature chose not to repeal § 52-328. Instead, the legislature removed the language referring to the levy of execution and replaced it with language referring to judgment liens. Public Acts 1984, No. 84-527, § 14. The legislature viewed this change to § 52-328 as technical. See 27 H.R. Proc., Pt. 18, 1984 Sess., p. 6572, remarks of Representative Richard D. Tulisano; 27 S. Proc., Pt. 5, 1984 Sess., p. 1661, remarks of Senator Howard T. Owens, Jr. Furthermore, we have determined that the four month period has the same meaning in the context of judgment liens and levies of execution. See *Beardsley* v. *Beecher*, 47 Conn. 408, 415 (1879) ("when it is desired to have the [judgment] lien relate back to the date of a previous attachment . . . it must be filed within four months after the rendition of final judgment; and in this respect it is precisely like the levy of an execution"). We, therefore, construe both §§ 52-328 and 52-380a in determining whether a judgment lien relates back to a prejudgment attachment on real property.

damental objective . . . is to ascertain and give effect to the apparent intent of the legislature. . . . In seeking to discern that intent, we look to the words of the statute itself, to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter." (Internal quotation marks omitted.) *Stevens* v. *Aetna Life & Casualty Co.*, 233 Conn. 460, 468, 659 A.2d 707 (1995).

The meaning of the phrase "final judgment" in § 52-328 (b) cannot be ascertained from the language of the statute. "Our case law has repeatedly recognized that the term 'final judgment' may have different meanings in different contexts. . . . [W]e have recognized that the relationship between a pending appeal and a judgment depends upon the nature of the issue that is to be addressed." (Citations omitted; internal quotation marks omitted.) *Connecticut Bank & Trust Co.* v. *Winters*, 225 Conn. 146, 158, 622 A.2d 536 (1993); *Capalbo* v. *Planning & Zoning Board of Appeals*, 208 Conn. 480, 487–88, 547 A.2d 528 (1988); *Preisner* v. *Aetna Casualty & Surety Co.*, 203 Conn. 407, 413–14, 525 A.2d 83 (1987). Therefore, "we have taken a functional approach in our construction of the term, eschewing the application of inflexible rules in favor of a contextual analysis. *Capalbo* v. *Planning & Zoning Board of Appeals*, supra, 487." *Stevens* v. *Aetna Life & Casualty Co.*, supra, 233 Conn. 467–68.

The context that informs "final judgment" for the purposes of §§ 52-328 (b) and 52-380a is the legislative policy[7] behind the enactment of judgment liens. Judgment liens are creatures of statute. They did not exist before 1878.

---

[7] We have reviewed the legislative history that is available and have determined that it is not helpful in resolving the issue before us.

"Prior to 1878 our statutes recognized only one method of enforcing [a monetary judgment]: that was by means of a levy of execution. . . . The first step of the levy created a specific lien by means of which the particular property or interest therein was, by the completion of the levy, sequestered to satisfy the judgment." *Ives* v. *Beecher*, 75 Conn. 564, 566, 54 A. 207 (1903). A levy on land was conditioned on a prior determination that the sheriff could not find sufficient personal property of the debtor to satisfy the judgment debt. After this condition had been met, the sheriff's levy on land was limited to a specifically identified portion of the debtor's land, measured "by metes and bounds," of a value sufficient to satisfy the judgment debt. Recording of the execution of the levy would vest in the creditor whatever title the debtor had held to that specific piece of land. See 2 E. Stephenson, Connecticut Civil Procedure (2d Ed. 1971) § 216 (a).

The levy of execution was an inadequate remedy for both debtors and creditors. Debtors were burdened by appraisals of their property that were susceptible of being hastily or inadequately conducted. Creditors might find themselves with portions of the debtor's real property that had little or no economic value. See id., § 216 (b).

Recognizing the need for a better remedy, the legislature, in 1878, enacted the provisions creating the judgment lien. See *City National Bank* v. *Stoeckel*, 103 Conn. 732, 736, 132 A. 20 (1926); *Ives* v. *Beecher*, supra, 75 Conn. 566–67; *Beardsley* v. *Beecher*, 47 Conn. 408, 413–14, 416 (1879); 2 E. Stephenson, supra, § 216 (a). In so doing, the legislature "sought to provide another more simple and beneficial process for the enforcement of the general right created by a judgment . . . . The legislature was evidently looking for a process which should be at once as effective as the old, and at the same time simple, inexpensive, usable by persons not astute in

the law, and not likely to be defeated in its ends through technicalities or exacting requirements." *Ives* v. *Beecher*, supra, 566–67; *Beardsley* v. *Beecher*, supra, 416. "[Because] this legislation was designed to further the interests of both creditor and debtor, [it must] be favorably construed to carry out its manifest purpose." *Ives* v. *Beecher*, supra, 567.

Although, as a general matter, the judgment lien statutes are intended to protect the interests of a judgment creditor, the inclusion of a time limitation for filing a judgment lien, such as the four month period specified by §§ 52-328 (b) and 52-380a (b), is intended to protect the interests of the judgment debtor. See *Hayes* v. *Weisman*, 97 Conn. 387, 391, 116 A. 878 (1922) (construing sixty day time limit for making demand on garnishee in precursor to § 52-328). "To make an attachment of property effectual to accomplish its object it is often necessary that the property should remain in the custody of the law for a limited period after final judgment; hence our statutes provide for a continuance of an attachment lien for four months after final judgment." *Beardsley* v. *Beecher*, supra, 47 Conn. 414. Upon the expiration of this four month period without a proper filing, however, the prejudgment attachment is extinguished. General Statutes § 52-380c; see *Bradbury* v. *Wodjenski*, 159 Conn. 366, 370, 269 A.2d 271 (1970); *Quinlan* v. *City National Bank*, 105 Conn. 424, 427, 135 A. 435 (1926).

Strict construction of the four month filing period for a judgment lien to enforce a prejudgment attachment, is, therefore, appropriate because these statutes provide a creditor with a powerful collection tool. An attachment enables a creditor to gain priority over any subsequent claim to the attached property. See *Union Trust Co.* v. *Heggelund*, 219 Conn. 620, 625, 594 A.2d 464 (1991); *Mathews* v. *Converse*, 83 Conn. 511, 514–15, 77 A. 961 (1910). As a prior lien, the attachment burdens the

debtor by limiting the debtor's ability thereafter to sell or mortgage the attached property. See *Farmers & Mechanics Savings Bank* v. *Garofalo*, 219 Conn. 810, 814, 595 A.2d 341 (1991) ("tying up a debtor's property prior to litigation of the validity of the creditor's claim is a 'harsh remedy' "). As a prejudgment lien, the attachment imposes this burden upon the debtor, before a trial on the merits, upon a showing by the creditor of probable cause to sustain the validity of the creditor's claim; see General Statutes §§ 52-278a through 52-278n; under circumstances affording only limited opportunity for appellate review. See *Nash* v. *Weed & Duryea Co.*, 236 Conn. 746, 749, 674 A.2d 849 (1996) and cases cited therein. Because civil actions may linger on trial court calendars for significant periods of time, the burdens imposed by a prejudgment attachment may be of considerable duration.

We conclude, therefore, that, in order to effectuate the legislature's intent of "fix[ing] a reasonable limit upon the duration of attachments"; *Hayes* v. *Weisman*, supra, 97 Conn. 391; a judgment lien will relate back to a prejudgment attachment only if the judgment lien is filed within four months of the judgment of the trial court, regardless of the possible pendency of an appeal.[8] The trial court's judgment is, in every case, a prerequisite to a judgment lien. The date of the trial court judgment is a date certain. A creditor filing a judgment lien

---

[8] In holding that "final judgment" always refers to the judgment of the trial court for purposes of §§ 52-328 (b) and 52-380a (b) in the context of determining when a judgment lien must be filed in order for it to relate back to a prejudgment attachment, we express no opinion on the meaning of "final judgment" in other statutes relating to such judgment liens. See, e.g., General Statutes § 52-278a (d) (defining "prejudgment remedy" as any remedy depriving defendant in civil action of "the use, possession or enjoyment . . . of, his property prior to final judgment"); and General Statutes § 52-283a (person who has filed notice of attachment "shall, after receiving satisfaction of his claim or after the rendition of a final judgment against him showing that nothing is due thereon," act to discharge such attachment).

within four months of that date has done that which is required to assure that the lien will relate back to the valid prejudgment attachment. A debtor, after the expiration of that time without a filing, has the right to conclude that this cloud on his or her title has been extinguished by the operation of law. General Statutes § 52-380c. Awaiting an appellate outcome creates the opportunity for unnecessary confusion and delay.[9] Assigning finality to the trial court's judgment, for the purposes of §§ 52-328 (b) and 52-380a (b), furnishes, therefore, a basis for a bright line rule that will promote certainty and efficiency. See *Connecticut Bank & Trust Co.* v. *Winters,* supra, 225 Conn. 159; *Paranteau* v. *DeVita,* 208 Conn. 515, 522–23, 544 A.2d 634 (1988).

A rule relating the timeliness of the filing of the judgment lien to the rendering of a judgment at trial does not impair the appellate process. Appellate review can go forward regardless of when the lien is filed. If the debtor pursues an appeal, execution of the judgment lien would presumably be stayed, unless the stay were

---

[9] Although an aggrieved party generally must file an appeal within twenty days from the issuance of notice of the rendition of the judgment or decision from which the appeal is taken; Practice Book § 4009; a variety of contingencies may delay the time for appeal indeterminately. An appealing party may obtain an extension of time. Practice Book § 4040. The Appellate Court has broad discretion to hear an appeal even if filed late. See *Kelley* v. *Bonney,* 221 Conn. 549, 554–59, 606 A.2d 693 (1992); C. Tait, Connecticut Appellate Practice and Procedure (1993) § 3.13. The appeal period may be tolled by the filing of certain posttrial motions, including motions to open a judgment, to set aside the verdict, for judgment notwithstanding the verdict and for a new trial. Practice Book § 4009; C. Tait, supra, § 3.12.

Other contingencies may result in the reversal of the judgment of the trial court long after the appeal period has passed. A court may open a judgment at any time if the court lacked jurisdiction; *Wilkinson* v. *Boats Unlimited, Inc.,* 236 Conn. 78, 83–84, 670 A.2d 1296 (1996); *Misinonile* v. *Misinonile,* 190 Conn. 132, 135, 459 A.2d 518 (1983); *Broaca* v. *Broaca,* 181 Conn. 463, 467, 435 A.2d 1016 (1980); or if the judgment had been obtained by fraud, duress or mutual mistake. See *In re Baby Girl B.,* 224 Conn. 263, 283, 618 A.2d 1 (1992); *Masters* v. *Masters,* 201 Conn. 50, 56, 513 A.2d 104 (1986); *Kenworthy* v. *Kenworthy,* 180 Conn. 129, 131, 429 A.2d 837 (1980).

expressly lifted. See General Statutes § 52-328 (d); see also Practice Book §§ 4046, 4128. If the debtor prevails on appeal, the stay would presumably extend until a new judgment, after a new trial, determines the final outcome of the dispute between the parties. If the creditor pursues an appeal, contesting the inadequacy of a trial court judgment in his favor, a judgment lien in the amount of the original judgment could presumably be rectified if the Appellate Court's judgment enhances the creditor's recovery.[10] See General Statutes § 52-278k.[11]

Our conclusion in this case is consistent with the holding of *City National Bank* v. *Stoeckel,* supra, 103 Conn. 732, in which we construed a statutory precursor to § 52-380a (b)[12] to bar the relation back of a judgment lien. The judgment creditor in *Stoeckel,* having failed to file a judgment lien within four months of the judgment of the trial court, did file such a lien within four months of the appellate decision affirming the judgment of the trial court. *City National Bank* v. *Stoeckel,* supra, 735. As we hold in this case, we concluded in *Stoeckel*[13] that

---

[10] The plaintiff maintains that third parties who rely on the judgment lien in purchasing or accepting as security an encumbered property may be prejudiced by the filing of a judgment lien the amount of which may be subject to appellate modification. We disagree. We assume that any such third party relying on the attachment would be aware of these possibilities. In addition, the trial court's ability to modify a prejudgment attachment under the appropriate circumstances; see General Statutes § 52-278k; provides a remedy for the protection of such third party interests.

[11] General Statutes § 52-278k provides in relevant part: "Modification of prejudgment remedy. . . . The court may, upon motion and after hearing, at any time modify or vacate any prejudgment remedy granted or issued under this chapter upon the presentation of evidence which would have justified such court in modifying or denying such prejudgment remedy under the standards applicable at an initial hearing."

[12] General Statutes (1918 Rev.) § 5233.

[13] Dictum in *Stoeckel* may support the position of the plaintiff. We stated: "The prevailing plaintiff, who desires to have the advantage of his [or her] attachment, to be safe, need only file his [or her] certificate within four months of the rendition of the judgment in the trial court; if an appeal is taken and the case reversed, that certificate would be, of course, nugatory, as pointed out in *Allen* v. *Adams,* 17 Conn. 67, 74 [1845]; but should he [or

the judgment lien, because not timely filed, did not relate back to the prejudgment attachment.[14]

The rule we announce today is simple and straightforward. A creditor seeking to assert priority rights pursuant to §§ 52-328 (b) and 52-380a (b) must file a judgment lien within four months of a trial court's final judgment in the creditor's favor. Because the plaintiff in this case failed to file its lien within this time period, the Appellate Court properly reversed the trial court's judgment in its behalf.

The judgment of the Appellate Court is affirmed.

In this opinion the other justices concurred.

she] prevail again in the trial court, he [or she] has but to file a new certificate; or, should he [or she] not want to file his [or her] certificate pending the appeal, he [or she] has ample time, should the judgment be affirmed, to proceed by the alternative process of execution." *City National Bank* v. *Stoeckel*, supra, 103 Conn. 739.

Even if this dictum could be read to imply that a trial court's judgment is final only if affirmed on appeal, in light of the advantages of a bright line rule we decline to follow it. Furthermore, we note the repeal of the alternate process of execution on real property, namely, the levy of execution, referred to in *Stoeckel*. See footnote 6.

[11] We decline to follow *Allen* v. *Adams*, 17 Conn. 67 (1845), in which, long before the enactment of the judgment lien statutes, we held that a judgment reversed on appeal is not a final judgment for the purpose of determining whether a levy of execution relates back to the prejudgment attachment on personal property.